434 A.2d 130

**COMMONWEALTH ex rel. Victoria A. OXENREIDER**

v.

**Leslie C. OXENREIDER, Appellant.**

Superior Court of Pennsylvania.

Argued June 9, 1980.

Filed Aug. 14, 1981.

64

Paul R. Ober, Reading, for appellant.

Eugene C. LaManna, Reading, for appellee.

Before HESTER, CAVANAUGH and VAN der VOORT, JJ.

PER CURIAM:

The dispute in this case involves the custody of the parties' two daughters. The oldest daughter was born in December, 1969 and the youngest in March, 1972. In July of 1976 Victoria Oxenreider left the marital domicile. The girls remained with their father. The parents were divorced in January, 1977 and both have remarried. Victoria Oxenreider, now Victoria Gift, lives with her husband in an apartment. Leslie Oxenreider lives in the marital home with his daughters, his wife Sharon and her child from a previous marriage. Sharon and Leslie Oxenreider also have a child of their own. The lower court awarded custody to the mother, but this order has been stayed pending this appeal.[1] We reverse.

The lower court acknowledged that there are qualitative and quantitative differences in the parties' residences, but concluded that both facilities are suitable for the children. The father's home consists of a living room, dining room, kitchen, bath and three bedrooms, one of which is shared by

1. Testimony was initially heard in this matter in June, 1977. The hearings were not concluded, however, until February, 1978 and the lower court opinion was not filed until November, 1979. Although the cause of the delay is not explained, the court does state in its opinion that no changed circumstances exist as to require further hearings. Neither party takes issue with this determination.

the two girls. There is a substantial yard where the children have a sliding board and other play things. Also a playground is located one-half block from the home.

At the time of her testimony Mrs. Gift and her husband lived in a one-bedroom apartment. During cross-examination Mrs. Gift described the apartment and the play area for children in the apartment complex. The apartment was comprised of a living room, dining room, bath, and small kitchen. The rooms were described as a "nice size". There is no playground in the complex, but children played on grassy areas between buildings. On weekends when Mrs. Gift had visitation with her daughters five people occupied the apartment, including her husband's daughter. Following the mother's testimony, however, a stipulation was placed in the record to the fact that Mrs. Gift had moved into a two-bedroom apartment in the same complex.

There will be no change in schooling arrangements whether custody is awarded to the mother or father. Although employed at the time of the hearing, Mrs. Gift stated that she would quit her job if awarded custody. Mr. Oxenreider works full-time. He is home by three-thirty-five every afternoon. Mrs. Oxenreider is not employed.

■ In awarding custody to the mother the lower court relied, in part, on the presumption that "a mother may be better able to arrange for the vicissitudes of any female child growing through puberty to womanhood." The court cited *Commonwealth ex rel. Zeedick v. Zeedick*, 213 Pa.Super. 114, 118–119, 245 A.2d 663, 665 (1978) (dissenting opinion by Hoffman, J.) and *Scheeler v. Rudy*, 2 D&C 3rd 772, 776 (1977) in support of this presumption. In *Scheeler* it was stated that despite the demise of the tender years presumption, another guideline remains for determining custody:

This guideline is well described by Judge Hoffman in his dissenting opinion in *Commonwealth ex rel. Zeedick v. Zeedick*, 213 Pa.Super. 114, 118–119, 245 A.2d 663, 665 (1968): "The age and sex of the child is a keystone factor in any custody determination. In this case, we are dealing

with young daughters. Our Court has, in such cases, followed a time-honored rule that the care and custody of a child of tender years, especially if the child is a girl, should be committed to the mother. *Urbani v. Bates*, 395 Pa. 187 149 A.2d 644 (1959); *Commonwealth ex rel. Horton v. Burke*, 190 Pa.Super. 392, 154 A.2d 255 (1959). Our Court affords great credence to this concept because experience has taught us that young girls need maternal care and affection. A mother can explain the processes of maturation and sexual knowledge to growing daughters better than a father. Experience has also taught us that a girl's psychological and social adjustments to her environment are more easily made through the confidence of a mother-daughter relationship. As a result of this knowledge, we have often reiterated that, absent compelling reasons, the needs of a daughter of tender years are best served by awarding custody to the mother. *Commonwealth ex rel. Keller v. Keller*, 90 Pa.Super. 357 (1927); *Commonwealth ex rel. Blatt v. Blatt*, 168 Pa.Super. 427, 79 A.2d 126 (1951)."

We believe that this guideline remains viable, regardless of the demise of the tender years doctrine, by reason of its logic and the weight of experience.

*Id.* This concept, referred to by appellant as the "tender sex presumption", has been specifically discredited by this court in the recent case of *Hugo v. Hugo*, 288 Pa.Super. 1, 430 A.2d 1183 (1981). In a child custody case the burden of proof is shared equally by the parents. *Rummel v. Rummel*, 263 Pa.Super. 97, 100, 397 A.2d 13, 15 (1979). Language in *Garrity v. Garrity*, 268 Pa.Super. 217, 224 n.4, 407 A.2d 1323, 1327 n.4 (1979), referring to the demise of the tender years presumption is no less applicable here: "In custody cases, the court may no longer simplify the complex factual variables by resorting to sweeping presumptions, but must diligently inquire into all pertinent evidence." Unfortunately, in the instant case the lower court placed undue emphasis on the children's sex while failing to fully consider factors of great importance to their welfare.

 The sole issue before us is the best interest of the children. *Gunter v. Gunter*, 240 Pa.Super. 382, 361 A.2d 307 (1976). As this court has often stated the scope of review we will exercise in a child custody dispute is of the broadest type. *Commonwealth ex rel. Spriggs v. Carson*, 470 Pa. 290, 368 A.2d 635 (1977); *Commonwealth ex rel. Myers v. Myers*, 468 Pa. 134, 360 A.2d 587 (1976); *In Re Custody of White*, 270 Pa.Super. 165, 411 A.2d 231 (1979); *In Re Custody of Neal*, 260 Pa.Super. 151, 393 A.2d 1057 (1978). Because of the Commonwealth's overriding concern for the well-being of its children, we are required to render an independent judgment based on the evidence and testimony and make such order on the merits of the case as to effect a just result. *In Re Custody of White, supra, Spells v. Spells*, 250 Pa.Super. 168, 378 A.2d 879 (1977); *Commonwealth ex rel. Zeedick v. Zeedick*, 213 Pa.Super. 114, 245 A.2d 663 (1968). So as to facilitate this broad review, the hearing court must provide this court not only with a complete record, *Augustine v. Augustine*, 228 Pa.Super. 312, 324 A.2d 477 (1974), but also with a complete and comprehensive opinion which contains a thorough analysis of the record and specific reasons for the court's ultimate decision, *In Re Custody of White, supra, Martinchek v. Martinchek*, 262 Pa.Super. 346, 396 A.2d 788 (1979); *Tobias v. Tobias*, 248 Pa.Super. 168, 374 A.2d 1372 (1977); *Gunter v. Gunter*, 240 Pa.Super. 382, 361 A.2d 307 (1976).

The opinion of the lower court falls far short of these oft-stated requirements. The opinion is a scant six pages, much of which is repetitious. The court's statements are mere conclusions; no analysis of the testimony of the several witnesses who were examined is provided. As will be seen below, factors which this court has held to be important in determining the child's best interests were not fully considered by the court below. However, despite the absence of a comprehensive opinion, the record in the instant case is sufficiently complete to permit this court to consider the merits. We note that such review is only possible because the essential facts are not in dispute. *See Pamela J.K. v. Roger D.J.*, 277 Pa.Super. 579, 419 A.2d 1301 (1980).

█ The greatest deficiency in the lower court's opinion is its failure to fully address the significance of maintaining the status quo on the children's development. It is established that continued residence of children may be controlling. *Commonwealth ex rel. Children's Aid Society v. Gard*, 362 Pa. 85, 66 A.2d 300 (1949); *Pamela J.K. v. Roger D.J., supra; Commonwealth ex rel. Cutler v. Cutler*, 246 Pa.Super. 82, 369 A.2d 821 (1977); *Commonwealth ex rel. Kraus v. Kraus*, 185 Pa.Super. 167, 138 A.2d 225 (1958). At the time of the hearing below the children had been in their father's care for two and one-half years. Now five years have elapsed since the mother removed herself from the marital home. It has been four years since Mr. Oxenreider brought his second wife and her son, Eric, into the home.

Given this situation, the case of *Pamela J.K. v. Roger D.J., supra*, is instructive. In that case the child, Juliet, had been living with her father for a period of approximately five years. The father had remarried prior to assuming custody of Juliet, and his second wife had a son by a prior marriage. The father adopted the son, who was approximately eighteen months younger than Juliet.

Because the father had deliberately discouraged and thwarted the visitation of the mother with her child, the mother sought custody. There was no question that the father deliberately obstructed the mother's right to visit her daughter. The lower court awarded custody to the mother on the basis of the child's resemblance to the mother, concluding that because the child manifested attributes of her mother, only the mother could offer Juliet the "guidance, support and encouragement whereby she can blossom in her individual development." On appeal this court held that there was no competent evidence to support the lower court's holding that the child's resemblance to the mother should be controlling as to custody. Moreover, this court found the lower court's opinion to be insufficient because it failed to consider the effects on Juliet of removal from her father's household. Despite the insufficiency of the lower court's opinion, we held that the record was sufficiently

complete to enable us to determine where the merits of the appeal lie. 277 Pa.Super. at 589, 419 A.2d at 1308. Exercising the very broad scope of review permitted this court in child custody cases, we reversed the lower court and placed custody of Juliet with her father.

In addressing the merits this court stated that there was no question as to the fitness of either parent. It was not disputed that the mother and her husband could furnish a suitable home for Juliet and provide "all the amenities a little girl could hope for". Nor was it disputed that the mother would foster Juliet's relationship with her father. However, this court held that the father's deliberate obstruction of the mother's right to visit her daughter was outweighed by the benefits that would result from continuing Juliet in her father's household, and awarded custody to the father on this basis alone.

In the instant case the children are happy and well-cared for in their father's home. Stacey, the eldest daughter, receives consistently good grades in school. (Tara was not of school age at the time of the hearing). Mr. Oxenreider provides for his daughter's moral development, and he himself serves as a deacon and instructor in their church. There is no question that he spends a great deal of time with his children and enjoys being a parent.

Moreover, there was much testimony that even before the parents separated the girls had a closer relationship with the father than with the mother. Mrs. Papich, a neighbor, stated that the father did most of the cooking and cleaning, that the children were more affectionate with the father. Mrs. Papich also testified that the children are cleaner, and that the home was much nicer since the separation. Similar testimony was heard from Mrs. Ludwig, a nurse who knew the mother as a child and was reacquainted with the mother following the birth of the eldest girl. Mrs. Ludwig had come to the home to instruct the mother in child care. She stated, however, that the mother was too timid and that the father performed most of the feeding and changing duties when Stacey was an infant. Later, when they visited in

each other's homes, Mrs. Ludwig noticed that the girls went to the father more than to the mother.

Mr. Oxenreider testified that following the separation he cared for all of the girls needs—preparing meals, bathing them, cleaning. Since his remarriage in July, 1977 the new Mrs. Oxenreider shares the responsibility for these tasks. Reverend Wagner, the pastor of the church Mr. Oxenreider attends and a frequent visitor of the Oxenreiders, testified concerning the Oxenreider home. He stated that the girls and Mrs. Oxenreider care for each other very much and that, while Mrs. Oxenreider has not tried to replace their mother, she satisfies their need for a mother in the home. Pastor Wagner also stated that the girls and Mrs. Oxenreider's son, Eric, have accepted one another as siblings and play very well together.

In addressing this issue in its opinion, the lower court simply states: "A court does not lightly set aside an on-going custodial arrangement. However, here past circumstances have been altered by the remarriage of the parties and the subsequent birth to one of the natural parents of another child." The court seems to believe that by the remarriage of Mr. Oxenreider and the birth of his child, the bonds of affection between the father and daughters are somehow lessened. There is no support for this in either case law or human experience. It is of great importance to the children that we consider not only the bonds of affection between them and their father and the possible effects on the girls of sundering those bonds, but the attachment of the girls to the father's wife and to the other children in the household. *See Pamela J.K. v. Roger D.J., supra; Commonwealth ex rel. Cutler v. Cutler, supra.* For four years Eric has lived with the girls as a brother, now the girls have a half-brother or sister that they have been with since its birth. It is to their advantage that such relationships be continued. *See Pamela J.K. v. Roger D.J., supra; Commonwealth ex rel. Kraus v. Kraus,* 185 Pa.Super. 167, 138 A.2d 255 (1958).

72

■ Another short-coming in the lower court opinion is that certain findings of facts are not supported by the evidence. Although the hearing court as a fact-finder must determine the weight to be given testimony and the credibility of witnesses, its findings must be supported by competent evidence. *Rupp v. Rupp*, 268 Pa.Super. 467, 408 A.2d 883 (1979); *Commonwealth ex rel. Myers v. Myers*, 468 Pa. 134, 360 A.2d 587 (1976).

First, the court found: "The principal confrontation, a state not uncommon in habeas corpus custody matters, focuses here between the natural mother and the father's wife, Sherry." Later in the opinion this "principal confrontation" is described as "mild though discernible". The only witness to testify concerning the relationship between Mrs. Gift and Mrs. Oxenreider was Mrs. Oxenreider who specifically denied that their relationship was less than cordial. Even if the lower court disbelieved Mrs. Oxenreider, there is no evidence whatsoever that the children were affected by this relationship. In fact there is ample evidence that is uncontradicted that Mrs. Oxenreider encouraged the girls to maintain a close relationship with their mother. For example, she invited the mother to Stacey's birthday party; she speaks to the mother every Tuesday when the mother telephones the girls; she invites the mother in when she picks up her children. Also Mr. and Mrs. Oxenreider have agreed to permit visitation every Thursday night although these visits had not been provided for in their visitation schedule.

Secondly, the court found: "The father and his wife on occasions arbitrarily and unilaterally cancelled rights of visitation which existed in the natural mother." According to the record there was one cancellation of visitation over a period in excess of two years. In that instance a major snow storm had occurred leaving fifteen to eighteen inches of snow. The father's work had been cancelled, the roads were not plowed, and the father was simply not willing to take a chance that the girls would be in an accident.

Finally, the court stated that the father's wife "instructed the children to call her 'mother' or 'mommy'." Once again Mrs. Oxenreider was the only witness to testify concerning this finding of fact. She testified that she was concerned because her son Eric had started to call her Sherry and because she was expecting another child. When she told the girls that they should call her mom, they stated that their mother would be upset if they did so. Mrs. Oxenreider told the girls she would speak to their mother. After a brief discussion with the mother, Mrs. Oxenreider assumed that she had acquiesced because the girls then began calling her "mom". Regardless of whether this evidence supports the court's statement that Mrs. Oxenreider "instructed" the children to call her "mother", there is no evidence that this incident was in any way harmful to the children. Neither the findings by the lower court nor the record supports a conclusion that Mrs. Oxenreider has attempted to usurp the mother's role or to limit the mother's involvement in her daughters' lives. We note, however, that in *Pamela J.K. v. Roger D.J.*, discussed at length *supra*, a much more serious confrontation between the natural parents caused by the custodial parent, which did interfere with the mother's right to a place in her child's life, was held not to overcome the child's need for stability.

■ Because of the continued residence of the children with their father and the importance of stability in a young child's life, we reverse the lower court and award custody to the father. We note that this court has found the maintenance of the status quo to be decisive even when custody has been in one parent for a significantly shorter time period. *See e. g. Commonwealth ex rel. Cutler v. Cutler, supra* (the father provided the primary home for over one year): *In Re Custody of Phillips*, 260 Pa.Super. 402, 394 A.2d 989 (1978) (the father provided a home for his son for approximately two-and-one-half years).

Order of the lower court is reversed and custody awarded to appellant Leslie C. Oxenreider.