474 A.2d 1165

**James D. MILLER, Appellant,**

**v.**

**Barbara E. Wright MILLER, Appellee.**

Superior Court of Pennsylvania.

Argued Jan. 12, 1984.

Filed April 19, 1984.

46

William J. Fulton, Harrisburg, for appellant.

Arthur K. Dils, Harrisburg, for appellee.

Before WICKERSHAM, DEL SOLE and MONTEMURO, JJ.

DEL SOLE, Judge:

Appellant and Appellee were married on February 15, 1979, but prior to their marriage, a son, McKenzie, was born to them on October 30, 1977.

Appellee also has another son, approximately eleven years of age, who has not resided with her since he was three years of age. He resides with Appellee's parents. This arrangement began when Appellee decided to live with the Appellant who expressed a lack of desire to live with Appellee *and* her first child.

The parties resided in the Harrisburg area and began to encounter marital difficulties. On October 6, 1981, they

executed a Postnuptial Separation Agreement and Property Settlement. In that Agreement primary custody of McKenzie was given to Appellant with temporary custody and visitation rights to Appellee. Following the separation, the Appellant remained in the family home in West Hanover Township, Dauphin County, Pennsylvania and Appellee moved to the State College area where she secured employment as a waitress. McKenzie continued to live with his father at the family residence and the father was and continues to be employed by the Commonwealth of Pennsylvania. From October, 1981, until the early part of 1983, the parties generally complied with the custody arrangement specified in the Separation Agreement. However, in the Spring of 1983, some problems arose which prompted Appellant to file a Petition to Confirm Custody in the Court of Common Pleas of Dauphin County, Pennsylvania. A hearing was held on the Petition to Confirm Custody on June 17, 1983, and at that hearing both parties presented extensive testimony in support of each's claim for primary custody of their son, McKenzie.

The trial court determined that the Postnuptial Agreement was not valid as it affected custody. Therefore, a full and complete hearing was held in order to determine what would be in the best interests of the child. Following the hearing, the trial court entered an Order granting primary custody to the Appellee-Mother and temporary custody and visitation to Appellant. This was a change in the existing custody arrangement.

While it is well-settled that in a child custody case the scope of review is broad, we must accept the trial court's findings of fact if supported in the record. However, we are not bound by the trial court's inferences and can make an independent review of the evidence to reach our own conclusions on the award of custody. *Commonwealth ex rel. Spriggs v. Carson*, 470 Pa. 290, 368 A.2d 635 (1977). *Appeal of Marilyn W.*, 325 Pa.Superior 39, 472 A.2d 635 (1984). Based upon our review we reverse the decision of the trial court and remand this matter for

48

further proceedings consistent with this opinion. In analyzing the trial court's actions we will first begin by examining the trial court's reason for removing McKenzie Miller from Appellant's custody and awarding custody to the Appellee. At the close of testimony the trial court determined that this would be a perfect case for joint custody if both parties lived in the same school district (N.T. 111–112). In addition, the trial court stated on page 112 of the record:

"I am going to have to make a decision. While I recognize that *the tender years doctrine* is out of existence, I still have a feeling that a boy of five years' old who lives both his mother and father and indicates that he likes to live with both of them, in fact, he says that he wants to live with both of them, he likes the house in West Hanover Township because it's better than the apartment because he does not like an apartment. On the other hand, he seems to like State College better than he likes West Hanover Township, so I am between the devil and the deep blue sea on that.

But getting back to my original thought, I still feel that the best interest of the child, and that is the only guiding light that I should use, is with the mother. And that is the way I intend to make the decision, although I am going to give rights to the father." (Emphasis added)

It is evident from reading the trial court's announced decision at the end of the hearing and reviewing the Memorandum Opinion filed by the trial judge, the trial judge impermissively awarded custody to the Appellee by applying the discredited and rejected "tender years doctrine".

While we have determined that the trial judge applied the wrong doctrine, we must further look to the record to determine whether or not the record justifies the award of primary custody to the mother. Our review of this record reveals it does not.

Here, we have a young child who has been residing with his father since birth. Following the separation between the parents, the child continued to reside with Appellant. The only testimony from a disinterested witness, came from

Mrs. Ruth Benner a Director of the Discovery School located in Harrisburg, Pennsylvania which the minor child attends. Mrs. Benner's testimony, found on pages 6, 7 and 8 of the record, clearly reveals that McKenzie was brought to school every morning by his father, that he was well cared for when he arrived at school, was properly fed, that he was well adjusted and performed well, that he was not a discipline problem, he played well with other children. Also, the school never had any problems with his behavior. Further, Mrs. Benner testified that the Appellant conducted himself as a concerned and loving parent who was involved with his child and the activities of his child at school.

In addition, the record reflects that Mr. Miller made proper arrangements for the care of his son at home in the event he had to be at work. Mr. Miller's aunt occupies a separate apartment in the home and she is available to care for McKenzie when the situation requires. In addition, it is not unusual for the child to go with his father to visit his paternal grandparents and the child attends church both when visiting with the paternal grandparents and at home.

Mrs. Miller presented testimony that indicates that the Appellant was doing well in raising the child. Question to Mrs. Miller found on page 90 of the record:

"Q. So in that sense he needs a father's care and a father's attention almost as much as he needs a mother, doesn't he?

A. Yes, I feel he needs a father.

Q. You would not deny the fact that Jim Miller is a loving and caring father that generally tries to do his best by the boy, would you?

A. No."

The only reason advanced by Mrs. Miller for a change of custody is found on page 89 of the record where she states in answer to the question as follows:

"Q. Is there anything more you can give McKenzie besides an elusive concept of motherly love?

A. I don't feel that I need to give any more. I feel giving the motherly love is the most important thing. I am the only person that can love McKenzie like a mother. I am his only mother. There is no one that can take care of him as a mother when he is sick as I can because I am his mother.

I am the only person that can do that. I am the only person that can teach him as a mother. I don't want to be selfish in any way with him, but I don't feel that McKenzie—I feel right now McKenzie needs a mother. I feel McKenzie needs a mother's touch, the feelings that a mother has that a male can not have. I feel McKenzie needs this."

There is nothing in the record presented on behalf of the Appellee to indicate that the Appellant was in any way not serving the best interests of the child. Further, there is sufficient evidence in the record to question Appellee's ability to raise the child and to provide a better environment. While the trial judge stated in his opinion "the mother evidenced a willingness to devote her time and life to the child and that the father, at best, would only be able to devote part of his time to the raising of the child" the testimony does not support that finding. Rather, when asked, the Appellee stated "if I have to, I'll—I'll give my notice and I'll quit my job, but I will spend my time with McKenzie". In addition, the mother is living with a gentleman who she hopes to marry following her divorce but these plans have not been finalized. (N.T. 93)

In addition, the court did not discuss the fact that the Appellee when faced with a situation involving her personal desires and her responsibilities as a parent, with regard to her first child, chose to abrogate those responsibilities and allow the first child be raised by her parents. While she now has a desire at some unknown time in the future to establish a home for both of her children, the court should not have moved this child from a healthy, happy environment, where the child is well adjusted and well cared for, to

one of untested value. As an old sage once said "If it ain't broke, don't fix it".

We find that the trial court erred in awarding primary custody to the Appellee and, therefore, we will reverse. We will remand the matter to the trial court with directions to enter an Order of primary custody on behalf of the Appellant and to establish such visitation times and partial custody to the Appellee as the trial court deems appropriate.

Jurisdiction shall be relinquished.

MONTEMURO, J., concurred in the result.