485 A.2d 1189

**Dennis T. HAAG**

v.

**Donna J. HAAG, Appellant.**

Superior Court of Pennsylvania.

Argued Aug. 15, 1984.

Filed Dec. 14, 1984.

492

Robert C. Rowe, Lebanon, for appellant.

Keith L. Kilgore, Lebanon, for appellee.

Before WICKERSHAM, JOHNSON and HOFFMAN, JJ.

WICKERSHAM, Judge:

In this case, we are presented with the difficult question of which parent should have primary custody of their minor child. This appeal is taken from the order of the Court of Common Pleas of Lebanon County granting primary custody of Douglas Haag to his father, Dennis T. Haag. Appellant is the boy's mother, Donna J. Haag.

Dennis (hereinafter "Father") and Donna (hereinafter "Mother") were married in April of 1965. Two children were born of the marriage: Denise, presently aged 18 and Douglas, presently aged 10.[1] The marriage was troubled, and on July 21, 1981, mother left the marital home, taking with her some personal items and Douglas. Upon her

[1]. The custody suit between the parties involves only Douglas. From the time of separation in July 1981 throughout the proceedings in the lower court, Denise has remained, to everyone's apparent satisfaction, with her father.

return from a vacation, Denise remained with Father. Shortly thereafter, the parties entered into a consent agreement for custody, visitation, and support, whereby the custody of Douglas would be with Mother and the custody of Denise would be with Father. In November of 1981, Father began divorce proceedings against Mother.

In February of 1982, Father apparently changed his mind and filed a petition for custody of Douglas with the Court of Common Pleas of Lebanon County. A conference was scheduled and held on February 26, 1982, but left the question of Douglas' custody unresolved. Home studies of both parties were conducted, and on August 11, 1982, a hearing was held before the Honorable G. Thomas Gates, P.J. Psychological testing and evaluation was ordered and taken of Mother, Father, Denise, and Douglas. After the filing of the psychological reports of the family, another hearing was held before Judge Gates on November 24, 1982. Thereafter, on January 3, 1983, Judge Gates issued the following decree:

AND NOW, to wit, January 3, A.D., 1983, after hearing, and in consideration of all of the testimony, the home study reports and the psychological evaluations we award primary custody of Douglas T. Haag to his natural father Dennis T. Haag. The natural mother Donna J. Haag shall have reasonable rights of visitation as the parties may agree. Failing to agree Donna Haag shall have the following periods of temporary custody away from the home of Dennis T. Haag:

A. Donna Haag shall have temporary custody of her son Douglas T. Haag from 6:00 p.m. on Friday until 6:00 p.m. on Sunday on alternate weekends commencing on Friday, January 7, 1983.

B. The alternate weekend temporary custody shall be suspended during the following major holidays: Thanksgiving, Christmas and Easter. During these holidays, the length in visitation periods shall be equal to the child's school vacation. Douglas shall spend the morning of each holiday with his father. From Noon until 7:00 p.m.

Douglas shall spend the remaining half of the holiday with his natural mother.

C. Douglas shall spend each Father's Day with his father and Mother's Day with his mother and this visit shall take precedence in the event it conflicts with the alternate weekend schedule described above.

D. Donna Haag shall have temporary custody for a period of two weeks during the months of either June, July or August upon giving thirty (30) days written notice in advance of the weeks she intends to exercise this right of temporary custody.

E. Nothing in this Decree shall prevent the parties from agreeing to additional periods of temporary custody or visitation.

It is from this order that Mother filed this timely appeal.

■ It is well established that in all child custody cases, the paramount consideration is the best interests and welfare of the child. All other considerations are deemed subordinate to the child's physical, intellectual, moral, and spiritual well-being. *In re Davis*, 502 Pa. 110, 465 A.2d 614 (1983); *K.L.H. v. G.D.H.*, 318 Pa.Super. 330, 464 A.2d 1368 (1983); *Hall v. Mason*, 316 Pa.Super. 160, 462 A.2d 843 (1983); *Robert H.H. v. May L.H.*, 293 Pa.Super. 431, 439 A.2d 187 (1981); *Commonwealth ex rel. Lettie H.W. v. Paul T.W.*, 281 Pa.Super. 262, 422 A.2d 159 (1980); *Garrity v. Garrity*, 268 Pa.Super. 217, 407 A.2d 1323 (1979); *McCourt v. Meyers*, 268 Pa.Super. 152, 407 A.2d 875 (1979); *Rummel v. Rummel*, 263 Pa.Super. 97, 397 A.2d 13 (1979); *Trefsgar v. Trefsgar*, 261 Pa.Super. 1, 395 A.2d 273 (1978).

■ Our scope of review in child custody cases is broad. Although "we must accept the trial court's findings of fact, unless they are unsupported by the evidence, ... on those facts we must make such order as our independent judgment persuades us right and justice dictate." *In re Donna W.*, 325 Pa.Super. 39, 41, 42, 472 A.2d 635, 636 (1984) (*en banc*). While we do not usurp the factfinding function of the trial court which is premised on a direct assessment of the witnesses' credibility, we are not bound by the trial

court's deductions and inferences. *Harner v. Harner*, 330 Pa.Super. 343, 479 A.2d 583 (1984). *Accord, In re Donna W., supra* (credibility of witnesses and weight to be given their testimony can best be determined by the judge before whom they appeared). *Cf. Commonwealth ex rel. Robinson v. Robinson*, 505 Pa. 226, 478 A.2d 800 (1984) (appellate court is empowered to determine whether the trial court's incontrovertible factual findings support the trial court's factual conclusions, but may not interfere with those conclusions unless they are unreasonable in light of the trial court's factual findings and, thus, represent a gross abuse of discretion).[2] In order for us to exercise our independent judgment, however, the record must be complete and the trial court's opinion comprehensive. *Harner v. Harner, supra; In re Donna W., supra; Commonwealth ex rel. Oxenreider v. Oxenreider*, 290 Pa.Super. 63, 434 A.2d 130 (1981).

■ Our determination of whether the trial court's findings of fact are supported by the record is made more complicated in the instant case because the trial court made no formal findings of fact or conclusions, but delivered its decision in narrative form. However, upon careful examination, it is plain enough that the findings of fact implied in the court's narrative are supported by the record and are thus binding upon this court.[3] *See In re Donna W., supra.*

2. To the extent that our holding in *In re Donna W., supra,* and the Pennsylvania Supreme Court's holding in *Commonwealth ex rel. Robinson v. Robinson, supra,* conflict, we will, of course, follow the latter case. However, under either rendition of our standard of review, the results in the instant appeal would be the same.

3. In its opinion, the lower court found the following:
   1. Father was 40 years old and Mother was 36 at the time of the hearing. (Lower ct. op. at 3).
   2. Father is employed as an electrician at Bethlehem Steel and earns about $22,800 a year. (Lower ct. op. at 3).
   3. Father has never had any job-related problems with absenteeism, tardiness, or alcohol in over 20 years on the job and is a reliable, steady worker. (Lower ct. op. at 3).
   4. Father works from 7:00 a.m. to 3:30 p.m. weekdays and is home when the children return from school. (Lower ct. op. at 3).
   5. Mother is employed at Hershey Foods and earns about $18,000 a year. (Lower ct. op. at 3).

The trial court then drew the following conclusions: (1) the physical characteristics of the two home environments favor

6.  Mother is active in the union at Hershey Foods and union activities require her to be out of the home many evenings. (Lower ct. op. at 3).
7.  Mother left the marital home in Bethel Township with Douglas on July 21, 1981, without prior warning to Father or Denise. (Lower ct. op. at 3).
8.  Mother and Douglas moved to a two bedroom apartment in Palmyra. (Lower ct. op. at 4).
9.  Father and Denise moved to a twelve room farmhouse, with 6 bedrooms, on 4.8 acres in Bethel Township. (Lower ct. op. at 4).
10. In January 1982, Mother's boyfriend, John Breidegan, ("J.B.") moved in with Mother. J.B. is 52 years old, and separated from his wife of 31 years and one remaining teenage child. (Lower ct. op. at 4).
11. Mother and J.B. share one bedroom, and Douglas has the other small bedroom. (Lower ct. op. at 4).
12. Physical characteristics of the two home environments favor Father. (Lower ct. op. at 4).
13. Douglas told Father that he'd seen Mother and J.B. "naughty in the bedroom." (Lower ct. op. at 5).
14. Denise is extremely unhappy about Mother's relationship with J.B. and refuses to visit Mother. (Lower ct. op. at 5).
15. The breakup of the family is solely attributable to Mother's falling out of love with Father and into a relationship with J.B. (Lower ct. op. at 5).
16. Douglas is a learning-disabled student and needs special attention in reading and spelling. (Lower ct. op. at 6).
17. Douglas is experiencing intellectual confusion, external pressure, feelings of inadequacy, hostility, and anger. (Lower ct. op. at 6).
18. Douglas has changed from a quiet well-adjusted boy to one with behavioral problems. (Lower ct. op. at 6).
19. Douglas and Father did many things together while Douglas was young and growing up. (Lower ct. op. at 6).
20. Father did his share of caring for Denise and Douglas as they were growing up. (Lower ct. op. at 7).
21. Father is basically a warm and caring person and father. (Lower ct. op. at 7).
22. Father is capable of cooking, and bathing, grooming, and taking care of both children. (Lower ct. op. at 7).
23. Father helps Douglas with his school work, as does Denise. (Lower ct. op. at 7).
24. Mother is highly controlled and evasive. (Lower ct. op. at 7).
25. Mother would call Denise foul names in front of others, including Douglas. (Lower ct. op. at 7).
26. Mother once kicked Douglas in the face when he failed to identify the letter Q. (Lower ct. op. at 8).
27. Father drinks beer on occasion. (Lower ct. op. at 8).
28. Mother "flipped out" shortly before the first hearing and walked around holding walls and mumbling. (Lower ct. op. at 9).

Father; (2) Mother's living arrangements have had an adverse effect on Douglas; (3) Father is basically a warm and caring person, while Mother is highly controlled and evasive; (4) Mother is more interested in her job and her union activities than in her family; (5) Mother shows evidence of instability and is less credible; (6) Father is the more fit parent; and (7) custody by Father would allow Douglas and Denise to live together.

■ Accepting the findings of fact as binding, we must decide whether the trial court correctly applied to those facts the pertinent principles of law. Mother argues that absent any compelling reasons for change, custody of a child of tender years should remain with his mother, with whom he has resided since birth. We have several problems with this argument. First, Douglas did not reside only with Mother since birth; both Father and Mother were present in the household until July of 1981, when Mother removed herself and Douglas from the home. Also, given the findings of fact, we seriously question Mother's conclusion that there were no compelling reasons for a change of custody. Finally, the "tender years" doctrine has been abolished in Pennsylvania. *Miller v. Miller,* 327 Pa.Super. 45, 474 A.2d 1165 (1984); *Haraschak v. Haraschak,* 268 Pa.Super. 173, 407 A.2d 886 (1979); *Rummel v. Rummel, supra; Commonwealth ex rel. Lee v. Lee,* 248 Pa.Super. 155, 374 A.3d 1365 (1977); *McGowan v. McGowan,* 248 Pa.Super. 41, 374 A.2d 1306 (1977).

■ Mother cites *Commonwealth ex rel. Jordan v. Jordan,* 302 Pa.Super. 421, 448 A.2d 1113 (1982) for the proposition that positive consideration should be given to the parent who has been the primary caretaker of the child, a sort of tender years doctrine in disguise. *Jordan* does hold that where the natural parents are both fit, and the child is of tender years, the trial court must give positive consideration to the parent who has been the primary caretaker. *Id.,* 302 Pa.Superior Ct. at 425, 448 A.2d at 1115. Furthermore, such a child should not be lightly removed from a parent

with whom that child has lived since birth. *Id.*, 302 Pa.Superior Ct. at 426, 448 A.2d at 1115.

Again, Mother seems to ignore several important details. We have already noted that unlike the situation in *Jordan,* Douglas has lived with both parents since birth, until shortly before this custody suit arose. Second, there is absolutely no evidence in the record that Mother was the primary caretaker of Douglas, and provided for his basic physical and psychological needs since birth. Instead, the record reveals that both parents worked, that Father and Douglas did many things together, including homework, and that Father did his share of caring for both children as they were growing up. We cannot say that the record shows Mother to have been the primary caretaker; rather it seems to demonstrate that, at the very least, both parents were involved in Douglas' caretaking. Finally, *Jordan* presumes that both parents are fit. In the instant case, the lower court expressly found Mother less fit than the father as a custodian of Douglas. (Lower ct. op. at 10).

Upon careful review of the record, we must affirm the lower court's grant of custody to Father. We agree with the court's conclusion that the physical characteristics of the two home environments favor Father. Mother lives with her boyfriend in a two bedroom apartment in Palmyra, in which Douglas has only a small bedroom. Father lives with Denise in a six bedroom farmhouse, situated on 4.8 acres in Bethel Township, close to where Douglas grew up, and within the same school district that Douglas originally attended before his move to Palmyra with Mother. We note, however, that this advantage is chiefly physical and therefore, not determinative. *Commonwealth ex rel. Jordan v. Jordan, supra* (superior physical environment is insufficient, standing alone, to justify an award of custody).

Another factor that, by itself, is not determinative, is the preference to keep siblings together. As a general rule, it is preferable to have siblings raised together. *In re Davis, supra.* However, this rule must yield to the paramount principle that the best interests of each individual

child must be the determining factor in custody decisions. *Id.; McAnallen v. McAnallen,* 300 Pa.Super. 406, 446 A.2d 918 (1982); *Sykora v. Sykora,* 259 Pa.Super. 400, 393 A.2d 888 (1978); *In re Russo,* 237 Pa.Super. 80, 346 A.2d 355 (1975). We note that Denise and Douglas are eight years apart in age, but Denise testified that she helped Douglas with his schoolwork and helped to take care of him generally, and that she used to comfort him when their parents fought. Douglas testified that he loved and missed his sister. Mother cites *McAnallen v. McAnallen, supra,* for the proposition that a court will not disturb a happy and stable relationship that a father has established with one child and a mother with another child. Upon closer examination, we find that *McAnallen* merely reaffirms the policy that, *absent compelling reasons,* siblings should not be separated. *McAnallen v. McAnallen, supra* 300 Pa.Super. at 415, 446 A.2d at 923; *Commonwealth ex rel. Newcomer v. King,* 301 Pa.Super. 239, 447 A.2d 630 (1982). The best interests of the children in *McAnallen* were served by a separation. In the instant case, inapposite on its facts, we find no compelling reasons to separate Denise and Douglas, with the acknowledgement that this is only one factor to consider in granting custody.

The lower court recognized that Mother's non-marital relationship with John Breidegan did not, of itself, deprive her of the right to custody. Rather, the issue to be determined is the effect the relationship has upon the child. *Commonwealth ex rel. Myers v. Myers,* 468 Pa. 134, 360 A.2d 587 (1976); *Brooks v. Brooks,* 319 Pa.Super. 268, 466 A.2d 152 (1983); *McAnallen v. McAnallen, supra; G.J.F. v. K.B.F.,* 284 Pa.Super. 139, 425 A.2d 459 (1981); *Commonwealth ex rel. Grimes v. Grimes,* 281 Pa.Super. 484, 422 A.2d 572 (1980).

> The court must never assume, or infer, that simply because a nonmarital relationship exists, the impact of the relationship on the children has been harmful. The evidence must show that it has been harmful, and this is so

whether the nonmarital relationship ... approaches a *de facto* marriage or ... is more transient.

*Robert H.H. v. May L.H., supra* 293 Pa.Super. at 437, 439 A.2d at 190. In the instant case, it appears that the lower court wrongly assumed or inferred such an adverse effect.[4] However, upon careful examination of the record, we find evidence that Mother's relationship with John Breidegan was harmful to Douglas. Both Father and Douglas testified that Douglas saw, and perceived, Mother and John "naughty in the bedroom" together. Douglas testified that they also walked around the house without any clothes on in front of him, and slept in the same bedroom.[5] *Compare Robert H.H. v. May L.H., supra,* with *McAnallen v. McAnallen, supra.*

While we do not assign as great weight to the nonmarital relationship of Mother as did the lower court, we find that, in combination with the superior physical environment of Father's home and the presence of Douglas' sister Denise in Father's home, plus the additional well-founded conclusions that Father is a warm and caring person, while Mother is evasive and controlled and that Mother shows serious signs of instability, the award of custody of Douglas to Father was not in error.[6] From our independent review of the

---

**4.** The lower court stated:
   "While we recognize that social mores have changed over the years, we are not satisfied that they've changed to the extent that a living arrangement such as this will not have an adverse effect on young Douglas."
Lower ct. op. at 5.
   "In truth we cannot directly attribute the change in this child to the relationship his mother has with John Breidegan. However, of one thing we are certain; it doesn't help any."
Lower ct. op. at 6.

**5.** Douglas expressed no preference ("I don't know") in favor of residing with either parent during his testimony in chambers. Even if he had expressed such a desire, however, this fact, while to be considered, would not be controlling. *See Hartman v. Hartman,* 328 Pa.Super. 154, 476 A.2d 938 (1984); *Commonwealth ex rel. E.H.T. v. R.E.T.,* 285 Pa.Super. 444, 427 A.2d 1370 (1981).

**6.** We are unable to agree with the lower court's conclusion that Mother is more interested in her job and her union activities than in her family. We note that most of the witnesses, including Father's,

502

record, we find that Douglas' best interests will be served by allowing him to remain in the primary custody of his father. Accordingly, we affirm the order of the lower court.

conceded that Mother was a good parent who loved her son. We cannot fault Mother for being interested in her job and outside activities without any concrete evidence of resultant harm to Douglas. *See In re Custody of Temos,* 304 Pa.Super. 82, 450 A.2d 111 (1982).