446 A.2d 1323

**DANIEL K. D., Appellant,**

v.

**JAN M. H. (formerly D.).**

Superior Court of Pennsylvania.

Argued Dec. 7, 1981.

Filed June 18, 1982.

38

Thomas J. Williams, Carlisle, for appellant.

Wayne F. Shade, Carlisle, for appellee.

Before CAVANAUGH, McEWEN and BECK, JJ.

BECK, Judge:

Appellant, the natural father of two children, appeals an order of the Court of Common Pleas of Cumberland County which dismissed his petition to modify a court order awarding custody of his children to Appellee, the children's natural mother. We affirm.

Following their marriage in 1969, Appellant and Appellee had two children—Alisa Marie born January 8, 1970, and Gwendolyn Ann born April 28, 1973. On January 3, 1976, Appellant and Appellee were divorced and agreed in writing *inter se*, each with the advice of counsel, that Appellee should have custody of their two children subject to certain visitation rights of Appellant. In April of 1980 Appellant filed a custody petition which caused the parties' custody agreement to be reformulated and incorporated into a consent order [1] issued by the court of common pleas on June 9, 1980, following an appearance by the parties before the court without a formal hearing. Pursuant to the consent order Appellee obtained "custody" of the children while Appellant acquired "temporary custody" of the children two of every three weekends during the academic year, four weeks during summer vacation, approximately one-half day of both Christmas and Easter, alternate children's birthdays and other holidays.

On April 9, 1981, Appellant filed a petition to modify the extant custody order, alleging that a substantial change in circumstances had occurred since the consent order was

1. Although an agreement between parties as to custody is not binding upon the court, *Commonwealth ex rel. Veihdeffer v. Veihdeffer*, 235 Pa.Super.Ct. 447, 344 A.2d 613 (1975), where the parties' agreement is incorporated into a court order, the order binds the parties and governs further court action in the same manner as any other custody order issued by a court. *Commonwealth ex rel. Ackerman v. Ackerman*, 34 D.&C.2d 111 (1964), *aff'd*, 204 Pa.Super.Ct. 403, 205 A.2d 49 (1964), *allocatur refused*, Feb. 15, 1965 (involved unilaterally requested modification of the parties' prior stipulation which had been approved by the court); *Commonwealth ex rel. Hickey v. Hickey*, 216 Pa.Super.Ct. 332, 264 A.2d 420 (1970), *allocatur refused*, May 25, 1970; Pa.R.C.P. 1915.7 and Pa.R.C.P. 1915.9 and the attendant explanatory comments of the Civil Procedural Rules Committee (to be effective July 1, 1982).

entered. After a three-day hearing during which Appellant, Appellee, the parties' current spouses, the two children, and numerous other witnesses testified, the court "confirmed" custody of the children in Appellee and dismissed Appellant's petition for modification.

Appellant argues on appeal that the court of common pleas erred (1) in placing the burden of proof solely upon him rather than equally upon both natural parents and (2) in evaluating the effect of the alleged changed circumstances upon the children's welfare.

■ The first inquiry in a custody modification proceeding is whether, since the entry of the existing custody order,[2] there has been a substantial change in circumstances that would justify a court's reconsideration of the custody disposition. *Morris v. Morris*, 271 Pa.Super.Ct. 19, 412 A.2d 139 (1979); *In re Custody of Phillips*, 260 Pa.Super.Ct. 402, 394 A.2d 989 (1978); *Commonwealth ex rel. Hickey v. Hickey*, 216 Pa.Super.Ct. 332, 264 A.2d 420 (1970), *allocatur refused*, May 25, 1970. The burden of proving a substantial change is upon the party seeking modification of the custody order. *Commonwealth ex rel. Zaubi v. Zaubi (Zaubi I)*, 275 Pa.Super.Ct. 294, 418 A.2d 729 (1980), *aff'd on other grounds*, 492 Pa. 183, 423 A.2d 333 (1981) (affirmed under Section 5364(f) of the Uniform Child Custody Jurisdiction Act, 42 Pa.C.S.A. § 5364(f): jurisdiction declined by reason of petitioner's misconduct); *Hickey.*

In his petition for modification Appellant averred generally that circumstances had changed since entry of the consent order and averred specifically that Appellee intended to remove the children from the Commonwealth. The court of

2. " 'To permit a party to relitigate a subject of relative fitness of parents to have custody of children by an inquiry into the same or other facts existing at the time of or prior to the former decree would lay a foundation for interminable and vexatious litigation . . . .' " *Commonwealth ex rel. O'Hey v. McCurdy*, 199 Pa.Super.Ct. 22, 24, 184 A.2d 290, 291 (1962) (quoting *Commonwealth ex rel. Crawford v. Crawford*, 170 Pa.Super.Ct. 151, 154, 84 A.2d 237, 238 (1951)); *Commonwealth ex rel. Zaubi v. Zaubi*, 275 Pa.Super.Ct. 294, 418 A.2d 729 (1980), *aff'd on other grounds*, 492 Pa. 183, 423 A.2d 333 (1981).

common pleas then conducted a hearing to examine Appellant's allegations. See *Commonwealth ex rel. O'Neill v. O'Neill*, 224 Pa.Super.Ct. 338, 307 A.2d 381 (1973). After the hearing, the court issued a written opinion analyzing in detail the parties' evidence as to the children's frequent changes of residence while in Appellant's custody, the remarriages of Appellant and Appellee, the quantity of time the children spent with both natural parents and the consequent bonds of affection that developed, the involvement of both Appellant and Appellee in the children's schooling and other activities, the abilities of both natural parents to satisfy the children's economic and emotional needs, the interaction of the children with their maternal and paternal grandparents, the alleged health problems of Appellee, and the apparent maturity and good adjustment of the children. The court concluded that the aforementioned evidence was not "sufficient to meet [Appellant's] burden of proving a change of circumstances *that would warrant a modification of the existing custody order."* (Emphasis added.) [3]

The burden of proof articulated by the lower court, prevailed in this Commonwealth until recently. Under prior case law, the party seeking modification of a custody order not only had to prove a substantial change in circumstances to justify the court's reexamination of the existing order but also had to establish that the change in circumstances so affected the children's best interests as to require a modification of the existing order. See *Commonwealth ex rel. Swanson v. Barry*, 199 Pa.Super.Ct. 244, 184 A.2d 370 (1962); *Commonwealth ex rel. Heller v. Yellin*, 174 Pa.Super.Ct. 292, 101 A.2d 452 (1953); *Commonwealth ex rel. Chumard v. Chumard*, 168 Pa.Super.Ct. 188, 77 A.2d 660 (1951); 39 Am.Jur.2d *Habeas Corpus* § 152 (1968).

**3.** At the beginning of his opinion the hearing judge stated that the "main issue" before him was whether Appellant "met his burden of proving a substantial change in circumstances since the Court's order of June 9, 1980, that would justify modifying that order to the extent of taking custody from the natural mother of the children and granting custody to" Appellant.

Under current case law, the party seeking modification of a custody award continues to have the burden of proving a substantial change in circumstances which will justify the court's reconsideration of the extant custody award. *Zaubi I.* However, once a substantial change has been established, both natural parents share equally the burden of demonstrating with which parent the children's best interests will be served. *In re Custody of Frank,* 283 Pa.Super.Ct. 229, 423 A.2d 1229 (1980); *accord, Commonwealth ex rel. Oxenreider v. Oxenreider,* 290 Pa.Super.Ct. 63, 434 A.2d 130 (1981). This standard of proof recognizes that to protect children's best interests the courts must assess evidence without reliance upon presumptions that prevent the natural parents from standing in pari causa. *Ellerbe v. Hooks,* 490 Pa. 363, 416 A.2d 512 (1980); *Oxenreider; Rummel v. Rummel,* 263 Pa.Super.Ct. 97, 397 A.2d 13 (1979); *In re Hernandez,* 249 Pa.Super.Ct. 274, 376 A.2d 648 (1977).

> In all cases of dispute between the father and mother of [a] minor child, as to which parent shall be entitled to its custody or services, the judges of the courts shall decide, in their sound discretion, as to which parent, if either, the custody of such minor child shall be committed and shall remand such child accordingly, regard first being had to the fitness of such parent and the best interest and permanent welfare of said child.
>
> ... In deciding what is in the best interest of the child, the court may not resort to presumption or otherwise shift the burden of proof; rather, the burden of proof is shared equally by both parents, and the court must award custody as the evidence dictates.

*In re Custody of Frank,* 283 Pa.Super.Ct. at 236, 423 A.2d at 1233 (citations omitted).

■ Despite the trial court's incorrect allocation of the burden of proof in the case sub judice, both Appellant and Appellee submitted abundant evidence concerning their children's welfare, including the testimony of disinterested witnesses. *Hugo v. Hugo,* 288 Pa.Super.Ct. 1, 430 A.2d 1183 (1981). The detailed record and comprehensive, written

opinion provided by the hearing court have enabled this Court to "make an independent judgment based upon its own careful review of the evidence." *In re Custody of Liberto*, 291 Pa.Super.Ct. 26, 28, 435 A.2d 201, 202 (1981); *Oxenreider*. Because both natural parents were afforded, and did fully exploit, equivalent opportunities to present evidence, we hold that the lower court's application of the outmoded standard of proof as to the children's best interest was harmless error in the instant case. Even without the benefit of the presumption, the evidence supports the lower court's finding that circumstances had not changed so as to affect the children's best interests and to require their being removed from Appellee's custody and placed in Appellant's custody.

■ Although the children have experienced several changes of residence while in Appellee's custody, neither party contends that the children are maladjusted. Both children are honor students and are characterized by third-party witnesses as being quite mature for their ages. *In re Custody of Liberto*. The children have been in Appellee's custody since 1976. See *Oxenreider; In re Custody of Phillips*. The older child testified that she could more freely discuss her problems with Appellee than with Appellant. Additionally, leaving the children in Appellee's custody would permit the children to maintain their relationship with their half-brother with whom they have lived since his birth. *Oxenreider*. "[C]ontinued residence of children with one parent may be controlling." *Hugo v. Hugo*, 288 Pa.Super.Ct. at 6, 430 A.2d at 1185; *Oxenreider*.

Before the hearing court appellant vigorously argued that he was better able than Appellee to provide financial security for the children. Nevertheless, the lower court correctly found that the difference in material advantages offered by Appellant and Appellee was not dispositive where both parties could supply an adequate home environment for the children. *Kessler v. Gregory*, 271 Pa.Super.Ct. 121, 412 A.2d 605 (1979); *see Hugo*.

Appellant also maintained below that his recent remarriage was a material change that would affect the children's welfare and that should enable him to assume custody of the children. However, Appellee established that her own remarriage had produced an environment in which the children had performed well over a period of years. Remarriage per se is not sufficient to warrant modification of a custody order. *Chumard.*

Finally, Appellant has asserted that Appellee's intention to move the children to Vermont in conjunction with her husband's having located employment in that state, militates against Appellee's retention of custody. But as the hearing court prudently observed, Pennsylvania courts no longer adhere to a preference favoring a resident custodial parent. *Commonwealth ex rel. Pierce v. Pierce,* 493 Pa. 292, 426 A.2d 555 (1981); *Commonwealth ex rel. Spriggs v. Carson,* 470 Pa. 290, 368 A.2d 635 (1977); *Hugo; Davidyan v. Davidyan,* 230 Pa.Super.Ct. 599, 327 A.2d 145 (1974). The lower court acknowledged that while the children's moving to Vermont would weaken their relationship with Appellant who resides in Pennsylvania, the children's staying in Pennsylvania with Appellant would weaken their relationship with Appellee if Appellee moved to Vermont. *Davidyan.* To condition an award of custody upon Appellee's agreeing to remain within Pennsylvania would be "an undue interference with the mother's freedom of movement." *Commonwealth ex rel. Steiner v. Steiner,* 257 Pa.Super.Ct. 457, 463, 390 A.2d 1326, 1329 (1978); *Commonwealth ex rel. E. H. T. v. R. E. T.,* 285 Pa.Super.Ct. 444, 427 A.2d 1370 (1981); *Davidyan.*

Citing *R. E. T.,* Appellant claims that Appellee has shown herself to be an unfit parent because as of the date of the hearing below Appellee allegedly had made minimal preparations for the planned relocation of the children to Vermont. To the contrary, the record contains myriad examples of preparatory steps taken by Appellee and her current husband to assure a successful relocation. After Appellee and her husband had visited Vermont and had learned of employment opportunities for both Appellee (the sale of

homemade crafts, *i.e.*, crafts which Appellee could make without leaving the children's home) and her husband (landscaping and grounds maintenance at year-round resort/residential communities), Appellee's husband returned to Vermont to assess more carefully the actual business prospects and to request a business loan. Appellee's husband also testified that he and Appellee had ascertained the availability of schooling and playmates for the children in Vermont and that he had investigated the rental of a home in Vermont which was being held for the family. The court below in its written opinion reasoned that as of the time of the hearing "the alleged move [was] not definite enough to prompt [Appellee] and her husband to actually buy a home in Vermont."

Furthermore, the hearing court noted that the children had moved several times (intrastate within a small distance from Appellant's home) while in their mother's custody and had adjusted well to each change of location. The children and other witnesses testified that either moving to Vermont with Appellee or living in Pennsylvania with Appellant would require the children to enter new schools and make new acquaintances.

Based upon the testimony of several witnesses, the court below properly found that whether the children were to move to Vermont with Appellee or were to remain in Pennsylvania with Appellant, they would stay in close contact with their grandparents and other relatives active in their lives at the time of the hearing. See *Hugo.* Additional testimony indicated that Appellee's sister and her family live in Vermont and that the sister's children would be suitable playmates for the children of Appellee and Appellant. As the hearing court also noted, if the consent order were not modified, Appellant would continue to have visitation rights including the right to have the children live with him for four weeks during summer vacation. Thus, Appellant's right to continue a relationship with the children would not be "unduly limited." *Commonwealth ex rel. Pierce v. Pierce*, 493 Pa. at 299, 426 A.2d at 559.

Accordingly, we affirm the decision of the hearing court to maintain custody of the children in Appellee subject to the previously specified visitation rights of Appellant.

McEWEN, J., concurred in the result.