479 A.2d 583

**Barry L. HARNER**

v.

**Elizabeth A. HARNER, Appellant.**

Superior Court of Pennsylvania.

Argued April 4, 1984.

Filed June 29, 1984.

Laurence T. Himes, Jr., York, for appellant.

Henry O. Heiser, III, Gettysburg, for appellee.

Before WICKERSHAM, OLSZEWSKI and HOFFMAN, JJ.

HOFFMAN, Judge:

This is an appeal from a custody order. For the reasons discussed below, we affirm.

The parties were married on September 26, 1975, and their only child, Chad Lynn, was born on August 3, 1976. Appellant, Elizabeth A. Harner, is a fourth grade elementary school teacher in Gettysburg, Adams County, Pa. Appellee, Barry L. Harner, is vice-president of Community National Bank of Southern Pennsylvania in Littlestown, Adams County, Pa. On October 4, 1982, appellee left the parties' marital home in Hanover, York County, Pa., and moved into Colonial Crest Apartments, an adult apartment complex in Hanover. Chad remained with appellant. For approximately the next six weeks, pursuant to the parties' arrangement, appellee exercised weekend visitation privileges. However, on the weekend beginning November 20, 1982, the parties had an argument which resulted in appellant following appellee and Chad when they left the marital home and running her car into appellee's car causing approximately $300 in damages. Appellee never returned Chad after that incident and currently lives with Chad in a rented house in Hanover. Appellee shares this house with Elaine Hertz, whom appellee met at Colonial Crest Apartments, and Mrs. Hertz's two teenage children. Chad was then six years old.

Pursuant to a divorce complaint filed by appellee on October 8, 1982, appellant's November 12 answer contain-

ing a custody counterclaim, and appellee's November 26 reply to the counterclaim, a pre-hearing conference was held before a court-appointed Master on December 2, 1982. The Master's report, filed December 21, listed the case for trial and recommended that primary custody be given to appellee with liberal visitation for appellant until the custody hearing. On February 25, 1983, a custody hearing was held before the lower court, which entered the following order on March 3, 1983:

AND NOW, TO WIT: This 3rd day of March, 1983, custody of Chad Lynn Harner, born August 3, 1976, shall be shared by the parents, Barry L. Harner, the father, and Elizabeth A. Harner, the mother. Legal custody shall be shared in that the parents shall have the responsibility for jointly making decisions which affect the child's educational, religious, medical and social welfare. Majority physical custody shall remain in the father subject to partial custody in the mother as follows:

1. On alternating weekends, from 5:00 p.m. on Friday to 6:00 p.m. on Sunday, beginning March 11, 1983.

2. From 4:00 p.m. until 8:00 p.m. each Tuesday.

3. On alternating holidays from 9:00 a.m. until 8:00 p.m., those holidays being Memorial Day, July 4, Labor Day and Thanksgiving.

4. In even numbered years from 2:00 p.m. on December 25 until 6:00 p.m. on January 1, and in odd numbered years from 4:00 p.m. on December 24 until 6:00 p.m. on December 30.

5. During the summer school vacation, an uninterrupted period of six (6) consecutive weeks upon thirty (30) days written notice to the father of the dates when such partial custody will be assumed.

The parties are encouraged to make such alterations and changes in the times of their respective custodial periods as will be suitable to their own schedules from time to time. We recognize that flexibility is desirable. We direct that two copies of this Order be transmitted to

counsel for each of the parties and that counsel transmit one copy to their respective clients.

This appeal followed.

■■■■■ It is well-established that the sole criterion in child custody decisions is the best interests and welfare of the child. *Commonwealth ex rel. J.J.B. v. R.A.McG.*, 283 Pa. Superior Ct. 185, 423 A.2d 1050 (1980); *Trefsgar v. Trefsgar*, 261 Pa.Superior Ct. 1, 395 A.2d 273 (1978); *Bender v. Bender*, 261 Pa.Superior Ct. 12, 395 A.2d 279 (1978); *In re Custody of Phillips*, 260 Pa.Superior Ct. 402, 394 A.2d 989 (1978); *Commonwealth ex rel. Cutler v. Cutler*, 246 Pa.Superior Ct. 82, 369 A.2d 821 (1977); Act of June 26, 1895, P.L. 316 § 2, 48 P.S. § 92. Ensuring the child's "physical, intellectual, moral and spiritual well-being" is the focal point of our evaluation of a child's best interests. *Commonwealth ex rel. Cutler v. Cutler, supra*, 246 Pa.Superior Ct. at 85, 369 A.2d at 822. Our scope of review in child custody cases is broad. Although "we must accept the trial court's findings of fact, unless they are unsupported by the evidence, ... on those facts we must make such order as our independent judgment persuades us right and justice dictate." *In re: Donna W. and Edward W.*, 325 Pa. Superior Ct. 39, 472 A.2d 635 (1984) (*en banc*), at 636. *See also Commonwealth ex rel. Pierce v. Pierce*, 493 Pa. 292, 426 A.2d 555 (1981) (independent judgment to be exercised in custody cases); *Commonwealth ex rel. Newcomer v. King*, 301 Pa.Superior Ct. 239, 447 A.2d 630 (1982). While we continue to accord weight to the lower court's findings which are premised on a direct assessment of the witnesses' credibility, we are not bound by the lower court's deductions and inferences. *See Commonwealth ex rel. Cutler v. Cutler, supra*, 246 Pa.Superior Ct. at 88, 369 A.2d at 823. In order for us to exercise our independent judgment, however, the record must be complete and the trial court's opinion comprehensive; otherwise, a remand may be necessary. *In re: Donna W. and Edward W., supra*, 325 Pa.Superior Ct. at 50–51, 472 A.2d at 641–642. *See also Commonwealth ex rel. Michael R. v. Robert R.R.*, 293

Pa.Superior Ct. 18, 437 A.2d 969 (1981), *appeal after remand*, 314 Pa.Superior Ct. 335, 460 A.2d 1167 (1983) (in order to facilitate broad appellate review of custody orders, trial court must provide complete record and comprehensive opinion containing thorough analysis of the record and specific reasons for the court's ultimate decision); *Commonwealth ex rel. Oxenreider v. Oxenreider*, 290 Pa.Superior Ct. 63, 434 A.2d 130 (1981) (despite absence of comprehensive opinion, record is sufficiently complete to permit appellate review of merits if essential facts are not in dispute).

 Appellant first attacks the custody order on the grounds that (1) the order was not accompanied by a comprehensive opinion containing a thorough analysis of the record and specific reasons for the court's ultimate decision, and (2) the record is incomplete and the essential facts in dispute. At the custody hearing, nine witnesses testified, including the parties, a psychiatrist, a child psychologist, the paternal grandmother, school teachers and Mrs. Hertz. Appellant sought to establish through testimony that appellee never disciplined Chad and instead encouraged Chad to disobey her, that appellee set a bad example through his prejudices against blacks and women, and that her own relationship with Chad was excellent. Appellee, on the other hand, sought to show that appellant tended to act emotionally and explosively to situations, that she threw things at Chad and treated Chad coldly, and that Chad feared appellant and did not want to live with her. When the court interviewed Chad in chambers, Chad expressed a desire to live with appellee. Following the hearing, the court informed the parties that it would consider the matter over the weekend and, subsequently, the court entered its custody order. Although the lower court made no formal findings of fact, the findings of fact implied in the court's narrative opinion, if supported by the record, are binding on this Court. *See In re: Donna W. and Edward W., supra*, 325 Pa.Superior Ct. at 55, 472 A.2d at 643. In its opinion, the court found the following:

(1) "[B]oth [parties'] homes offer satisfactory and appropriate living accommodations for the child." (Lower Court Opinion at 2).

(2) "[Appellant] is a very competent, capable person possessed of a good educational background." (Lower Court Opinion at 2).

(3) "[Appellant] does in fact love the child, and has devoted a fair amount of time to his upbringing." (Lower Court Opinion at 3).

(4) "[T]he paternal grandmother has had the child in her home for substantial periods of time after school and in the evening." (Lower Court Opinion at 3).

(5) "[Appellant] harbors great bitterness toward [appellee] and she is unlikely to see any good points in him whatsoever." (Lower Court Opinion at 4).

(6) "[D]eep-seated problems ... appear to now exist between mother and son." (Lower Court Opinion at 5).

(7) "[Appellee] has a loving relationship with his son, and ... the son returns that affection." (Lower Court Opinion at 5).

(8) "While the mother was responsible for more of the day-to-day parenting than the father, ... he has the ability and the desire to provide the parenting necessary for the proper training of his son." (Lower Court Opinion at 5).

(9) "[Appellee and Mrs. Hertz] do intend to establish a home for her children and for Chad[.]" (Lower Court Opinions at 5).

(10) Appellee has an admitted bias towards minorities and women. (Lower Court Opinion at 5–6).

(11) "The paternal grandmother, Mrs. Viola Harner, is seventy-four years of age but appears to be alert and active. It is obvious that she has a deep affection for her grandson and showed a considerable degree of understanding of the tensions and pressures which have contributed to and resulted from the disintegration of the marriage of Chad's parents." (Lower Court Opinion at 6).

(12) "We are satisfied that the father's new relationship [with Mrs. Hertz] is a stable and 'meaningful' one, in the fashion of the day." (Lower Court Opinion at 7).

(13) "Both the parents have the intelligence and background to participate in the decisions that will affect Chad's life." (Lower Court Opinion at 7).

These findings are supported by competent evidence in the record. The lower court also expressed concern over the allegations of appellant's "volatile temper", the testimony regarding appellee's prejudices, and appellee's "meretricious relationship" with Mrs. Hertz. (Lower Court Opinion at 3, 5–6, 7). The court then drew the following conclusions: (1) Although appellant would be an appropriate custodial parent for Chad, counseling would be required to resolve the problems between them; (2) appellee would also be a proper custodial parent for Chad; (3) the home that appellee and Mrs. Hertz intend to establish would be "a cohesive family unit in which Chad can look forward to a normal development"; (4) the "extended family" aspect of the case, involving the grandmother's babysitting role, is an important factor; (5) Chad will have a better chance of normal development by placing custody in appellee; (6) Chad's best interests also require liberal visitation with appellant; and (7) the concept of shared custody is appropriate in this case. (Lower Court Opinion at 5, 6, 7).

■ Appellant argues that the lower court failed to explain *why* Chad's best interests would be better served in appellee's custody. This argument is meritless. It is clear from the opinion that the court conducted a thorough analysis of the record and outlined specific reasons for its decision. We can determine from the court's opinion that the deciding factors were the loving home environment presently provided for Chad by appellee, Mrs. Hertz, and the grandmother as compared with the negative relationship between appellant and Chad, Chad's hostile attitude towards appellant, and the indications of appellant's violent tendencies. Although the court makes no mention of Chad's preference, it is possible that the court also con-

sidered this fact. *See Commonwealth ex rel. E.H.T. v. R.E.T.*, 285 Pa.Superior Ct. 444, 427 A.2d 1370 (1981) (child's expressed preference for a particular parent is to be considered but is not controlling).

■ Appellant also argues that the lower court failed to explore fully the effects of appellee's prejudices and the problems between appellant and Chad on Chad and also failed to make appropriate findings of fact on disputed issues, particularly, appellant's role prior to the separation, her drinking habits and her emotional stability. After a careful review of the record, we believe that all the relevant circumstances, including the aforementioned, were thoroughly examined at the custody hearing and adequately dealt with in the lower court's opinion. Further, the lower court did recognize appellant's role as Chad's primary caretaker prior to the parties' separation. *See* Lower Court Opinion at 5. Moreover, although the lower court merely referred to the testimony regarding appellant's drinking habits and expressed it concern as to the allegations of appellant's volatile nature, without making express determinations thereon, this does not hamper our ability to make an independent judgment because we can readily infer from the lower court opinion that the court was primarily concerned with the "deep-seated problems" between appellant and Chad and with Chad's strong hostility towards appellant. Additionally, although the court considered testimony both supporting and refuting the allegations of appellant's volatile behavior, the court apparently did not believe that it was enough of a problem to render appellant an unfit custodian. Therefore, we conclude that both the lower court's opinion and the record were complete and comprehensive, covered all relevant factors, and enabled us to exercise independent review.[*]

[*] We find *Bender v. Bender,* 261 Pa.Superior Ct. 12, 395 A.2d 279 (1978), cited by appellant, distinguishable because the lower court's opinion in that case was clearly insufficient and failed to discuss all the factors relevant to the determination of the child's proper custodian.

■ Appellant contends, alternatively, that the record, if found complete, does not provide persuasive reasons for confirming custody in appellee. She argues specifically that the lower court erred in its analysis of (1) the grandmother's role in the extended family, (2) the effect of appellee's admitted prejudice against blacks and women, (3) the effect of appellee's new living arrangement on Chad's development, and (4) the effect on Chad of maintaining the status quo. We disagree. First, contrary to appellant's assertion, we do not believe that the lower court implied in its opinion that the paternal grandmother's role as a before-and-after school babysitter for Chad would cease in the event custody was awarded to appellant. The court merely stressed the importance of that role in view of the fact that all of the adults in this case are employed. This factor would favor either party. However, the court did appear to view with favor the convenience of the present situation: Chad's living with appellee, appellee dropping Chad off at the grandmother's house in the morning for breakfast, the grandmother's walking Chad to school and bringing him back after school to her home, where appellee picked him up after work. Next, the lower court recognized that appellee had admitted his prejudice towards blacks and women and had expressed his intent to deal with it. In this regard, the court stated:

> It is difficult to evaluate these prejudices and the effect that they may have upon the child; also it is difficult to assess the degree of success the father will have in addressing these problems. However, we do not feel that these negative attributes are in themselves disqualifying to the father.

(Lower Court Opinion at 5–6). Although we disapprove of such prejudices, we find it clear from the record and opinion that the lower court had the same concern and, consequently, thoroughly considered this factor in reaching its decision. Moreover, many factors are taken into account in determining what will be in the best interests of the child and we are reluctant to disturb the weight given to this

factor by the lower court, which assessed appellee's credibility in this regard after personally observing him on the witness stand.

■■ We also find that the lower court properly analyzed the effect on Chad of appellee's living arrangements with Mrs. Hertz, stating:

[W]e express our concern that the father is living in a meretricious relationship. We acknowledge that the Appellate Courts have stated repeatedly that that fact alone cannot determine the right of custody adversely to the person living in such a relationship. Whatever our own views may be concerning the appropriateness of the placing of a six-year-old child in that situation, we are bound by the Appellate Court decisions. We are satisfied that the father's new relationship is a stable and "meaningful" one, in the fashion of the day.

(Lower Court Opinion at 7). The court also found that appellee and Mrs. Hertz intend to marry and establish a home for Chad and Mrs. Hertz's two children as soon as their respective divorces are finalized. (Lower Court Opinion at 2, 5). The court then concluded that such a home will be a "cohesive family unit in which Chad can look forward to a normal development." (Lower Court Opinion at 5). Contrary to appellant's assertion, we do not believe that the court based its custody decision on a presumption that two-parent families are superior to one-parent families. As previously noted, the court, in fact, found that both parties' homes would offer satisfactory living accommodations for Chad. We also note that the record indicates that Chad's living with appellee and Mrs. Hertz and her two children has had a favorable effect upon Chad's emotional well-being and progress at school. "[W]here the child's parents are equally fit, or nearly so, ... the fact that a stable, long-continued and happy relationship has developed between the child and one of the parents may be of critical importance to the formulation of an appropriate custody decree." *Pamela J.K. v. Roger D.J.*, 277 Pa.Superior Ct. 579, 589, 419 A.2d 1301, 1307 (1980). Although it is true that appellant acted

as the primary caretaker for the first six years of Chad's life while appellee has only had custody of Chad since November 20, 1982, the record indicates that the home environment prior to the parties' separation was not a happy one due to the parties' disagreements. On the other hand, it appears that Chad has been doing well while in appellee's primary custody. *See Commonwealth ex rel. J.J.B. v. R.A.McG., supra*, 283 Pa.Superior Ct., at 188, 423 A.2d at 1052 ("[C]ourts are reluctant to disturb existing custody arrangements which have satisfactorily served the best interests of the children concerned."). Therefore, we cannot say that the lower court erred in approving of the stability and favorable effect of the current status quo.

From our independent review of the record, we find that the conclusions drawn by the lower court regarding Chad's custody are correct. Under these circumstances, we hold that Chad's best interests will be served by allowing Chad to remain in the primary custody of his father. Accordingly, we affirm the order of the court below.

Affirmed.