569 A.2d 353

**Robert T. LOZINAK**

v.

**Kathleen LOZINAK, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 24, 1989.

Filed Jan. 29, 1990.

Douglas M. Johnson, Souderton, for appellant.

Richard B. Perlman, Norristown, for appellee.

Before CIRILLO, President Judge, and POPOVICH and CERCONE, JJ.

CERCONE, Judge:

This is an appeal by Kathleen Lozinak from the final supplemental order of the learned trial judge, the Honorable Marjorie C. Lawrence, entered on November 28, 1988, setting forth a conditional arrangement for the physical custody of an eight-year-old child, Heather, born to Kathleen and her husband Robert T. Lozinak, on November 11, 1980.

The order provided for primary physical custody to Kathleen, the mother, and partial physical custody to Robert, the father, on the condition that the mother remain in Pennsylvania. If she decided to move to Iowa, primary physical custody would be placed with the father.

In the face of the facts of this case, the custody order did truly contain a Solomonic touch, as the trial judge intimated. However, unlike the mother who was faced with the dilemma of Solomon's challenge, the mother in the instant case need not fear for the physical well-being of her child. If she is more interested in her child's best interests than her own, considering all the circumstances of this case as they presently stand, she will remain in Pennsylvania and

continue to have primary physical custody of her child, as the learned court has given her the option to do.

The procedural and factual history of this case are set forth at length in the most able opinion and supplemental opinion of Judge Lawrence. The judge has filed an articulate, comprehensive, and clear analysis of the record giving specific reasons for her decision as supported by Pennsylvania law relevant to trial and appellate court standards of duty and of review in custody cases. For cases concerning the paramount concern for the best interest of the child, *see Harner v. Harner*, 330 Pa.Super. 343, 479 A.2d 583 (1984); *Artzt v. Artzt*, 383 Pa.Super. 23, 556 A.2d 409 (1989); *Fisher v. Fisher*, 370 Pa.Super. 87, 535 A.2d 1163 (1988); *Brooks v. Brooks*, 319 Pa.Super. 268, 466 A.2d 152 (1983); for standard of review by appellate court, *see Burke v. Pope*, 366 Pa.Super. 488, 492, 531 A.2d 782, 784 (1987); *Lombardo v. Lombardo*, 515 Pa. 139, 147, 527 A.2d 525, 529 (1987); *Commonwealth ex rel. Robinson v. Robinson*, 505 Pa. 226, 237, 478 A.2d 800, 806 (1984); *Schwarcz v. Schwarcz*, 378 Pa.Super. 170, 548 A.2d 556 (1988); *Dolan v. Dolan*, 378 Pa.Super. 321, 548 A.2d 632 (1988); for the role of primary caretaker, *see Commonwealth ex rel. Jordan v. Jordan*, 302 Pa.Super. 421, 448 A.2d 1113 (1982), *Brooks v. Brooks, supra;* for credibility of witnesses, *see Commonwealth ex rel. E.H.T. v. R.E.T.*, 285 Pa.Super. 444, 448, 427 A.2d 1370, 1372 (1981).

We will therefore not repeat the law applicable in this case nor all the general facts adduced at trial, but will distill from the totality of the evidence the essence of this rather mundane but all important case.

Kathleen and Robert were married on July 8, 1978. A daughter, Heather, was born to them on November 11, 1980. After six years, they separated in September, 1986. Upon separation, the mother, lived with daughter Heather at five different places all in a relatively short time—at a girlfriend's house in Phoenixville, at her brother's apartment in Hatfield, at two different apartments in Lansdale

and again in Phoenixville, all in the southwestern part of Pennsylvania.

A month after separation, Kathleen, the mother, met 21–year old James A. Grace (at the time of hearing on July 9, 1988, Robert Lozinak, father, was 31 years of age and Kathleen, the mother, was 28 years old) and a year later began living with him. During this time, the father met Sandy Zigon to whom he became engaged and with whom he lived after separation and his divorce from his wife.

On December 2, 1986, the father began a divorce action in Montgomery County. The parties resolved the question of custody of Heather by entering into an agreed court order dated June 3, 1987, providing shared legal custody of Heather, with primary physical custody remaining with the mother and partial physical custody with the father.

This arrangement of custody proved to demonstrate that both parties were fit parents who gave loving care and protection to Heather. Each gave much time to Heather in play, recreational outings, time, study, proper food and clothing. However, as between the mother and father, there was little or no evidence to indicate the presence of enchantment or abiding love so poignantly heralded by the poets. During this union, the mother cared for Heather and did the housework and the father worked as a truck driver. In this comparatively short time of marriage, the seed of estrangement and unknowing grew into a bitter fruit of dissension to finally deteriorate into the dust of a final decree in divorce which occurred on April 28, 1988. In the meantime, little Heather proved herself to be a strong, self-reliant, well-balanced, emotionally stable and intellectually sound child. She loves both her parents and was impressively careful at the hearing not to favor one over the other. A warm and strengthening relationship developed for her with both parents. It was apparent she could be happy with either parent. The problem facing the learned court, however, was to decide what would be in Heather's best interest insofar as primary physical custody was concerned.

Heather achieved excellent grades in school, adjusted well to teachers and classmates at school, and friends and relatives in her familial surrounding. Her grandparents on both sides of her family were kind and loving to her. In other words, her world was a happy, wholesome, healthful one, all flourishing in this supporting environment of southeastern Pennsylvania. Sometime after the divorce, the mother decided to marry James A. Grace, whom she referred to as "Al" and to move to Iowa with him and Heather. The father, realizing the great danger to his partial custody of Heather, filed a petition for modification of the custody order of June 3, 1987, culminating in the hearing before the trial court. The evidence adduced at the hearings demonstrated that both the father and (Al) James Grace were practically on the same economic level at a balance between income and familial needs. There is nothing in Iowa where the mother wishes to take Heather that is predicated upon some economic, educational, religious, health, or emotional compulsion dictating or justifying such a drastic move in the life of Heather at this time. All of the child's ties are in Pennsylvania. Her significant relationships here are bound up in her teachers, classmates, friends, and relations who give her that abundance of self-assurance and a glowing view of life at this crucial time in her young life. With both parents remaining in Pennsylvania, nothing could give Heather more contentment.

Order of the lower court affirmed and Kathleen, the mother is given 30 days within which she is to decide whether she will live in Pennsylvania or Iowa, thus resolving the problem of primary-partial physical custody.

POPOVICH, J., files a dissenting opinion.

POPOVICH, Judge, dissenting.

I respectfully dissent.

In the instant appeal, Heather's best interest is the primary issue and her welfare should remain the focus of our opinion. After reviewing the trial court's evaluation of this

case, I do not dispute that Heather's best interest may well be served in Pennsylvania. Clearly, many of her ties are within this state.

However, I disagree with the majority's analysis granting Kathleen thirty days to decide whether she will live in Pennsylvania or Iowa.[1] This ruling is unduly restrictive. It infringes on Kathleen's constitutional right of interstate travel. Additionally, it does not settle the issue of which parent can best provide for Heather's needs.

Custody awards do not hinge upon a parent's decision whether to move out of state. Instead, where both parents are equally fit, the court's duty is to balance all of the facts and circumstances of a given case to determine who will serve the *best interests* of the child. *Murphey v. Hatala,* 350 Pa.Super. 433, 438–39, 504 A.2d 917, 920 (1986). The law is replete with cases enunciating this standard. *See Albright v. Commonwealth ex. rel. Fetters,* 491 Pa. 320, 323, 421 A.2d 157, 158 (1980). Case law further indicates that a child of tender years will adjust to a new environment if s/he is moved. The focus of these decisions is on the strength and stability of the relationship between the parent (generally the primary caretaker) and the child, not the potentially adverse effect of interstate movement. *See Daniel K.D. v. Jan M.H.,* 301 Pa.Super. 36, 44–45, 446 A.2d 1323, 1326–27 (1982); *Commonwealth ex rel. Jordan v. Jordan,* 302 Pa.Super. 421, 448 A.2d 1113 (1982); *Commonwealth ex rel. Pierce v. Pierce,* 493 Pa. 292, 426 A.2d 555 (1981) (in deciding a custody dispute, parent's intention to remove the child from the state was not a controlling consideration); *Davidyan v. Davidyan,* 230 Pa.Super. 599, 327 A.2d 145 (1974) (welfare of the child is the primary factor to consider in awarding custody).

1. I note that the trial court's order did not place a thirty-day contingency on Kathleen's decision. There is no indication in the record that the trial court intended to force Kathleen into making her own custody determination; rather, the order placed primary physical custody of Heather with her mother, unless and until Kathleen moved to Iowa.

Here, the trial court's order provided primary physical custody to Kathleen and partial physical custody to Robert, conditioned on Kathleen's remaining in Pennsylvania. In the event that Kathleen moved, primary physical custody would shift to Robert.

These being the circumstances, I would reverse the court's order and remand with instructions to place Heather in the more suitable environment. To accomplish this end, the trial court should evaluate the child's situation as a whole, taking into account the reasons that it initially placed primary care for the child with her mother. *See Brooks v. Brooks*, 319 Pa.Super. 268, 466 A.2d 152 (1983); *see also Mahoney v. Mahoney*, 354 Pa.Super. 585, 512 A.2d 694 (1986) (focus of custody suit was on the strength of the parents' relationship with the child). If, after considering all of the pertinent facts, the court deems that despite Kathleen's fitness, Heather's *best interest* will be served with her father, then primary physical custody should be placed with him.[2] Further, if the trial court finds that it would be in Heather's best interest to remain in Pennsylvania, then its order should explicitly reflect this decision. In the instant case, the majority's review has exceeded the scope of the trial court's order by adding a thirty-day time limitation in which Kathleen is to choose whether to remain in Pennsylvania or move to Iowa.

The trial court's order conditions Heather's custody on her mother's choice of residence, without any discussion as to corresponding constraints on Robert. There is no guarantee that Robert will choose to stay in Pennsylvania. Nevertheless, the court's order does not prohibit him from changing his residence. The effect of the court's order, therefore, is not only an interference with Kathleen's right to interstate travel, but an unequal application of the restriction as well. In light of the majority's opinion, I question whether this court's decision would have been the

2. In the event that Robert's circumstances should change, Kathleen should be made aware of her option to file a petition for modification of custody.

same if Kathleen chose to move to New Jersey or across town instead of to Iowa. *See Commonwealth ex rel. Parikh v. Parikh*, 449 Pa. 105, 108–09, 296 A.2d 625, 627 (1972) (paramount interest in a custody contest is the child's "physical, intellectual, spiritual and emotional well-being"; all other interests are subordinate thereto).

The evaluation of the custody issue should have ended with a discussion and resolution of Heather's best interest. The ultimate decision in this case should not be predicated upon whether or not Kathleen decides to move, for this completely discounts the possibility that Heather's best interest may be with her mother. *See Egelkamp v. Egelkamp*, 362 Pa.Super. 269, 273, 524 A.2d 501, 503 (1987) (primary caretaker provides stability and continuity to a child); *see also Murphey v. Hatala*, 350 Pa.Super. 433, 446, 504 A.2d 917, 924 (1986) (judge must award custody to parent who has proved superior fitness by a preponderance of the evidence); *Commonwealth ex rel. Steiner v. Steiner*, 257 Pa.Super. 457, 390 A.2d 1326 (1978) (conditioning a custody award upon an agreement to remain in the jurisdiction represents an undue restraint on the freedom to travel).