## Lambert v. Lambert

480

*Lynne Z. Gold-Bikin,* for plaintiff.
*Susan K. Lambert,* in propria persona.

SUBERS, *J.,* January 29, 1991—This custody matter was the subject of a long court hearing, resulting in a custody order and opinion (Lawrence, *J.,* dated August 1, 1989). Since that time defendant/appellant, mother, resided in Virginia until August 1990 when she and the children moved to Colorado, and plaintiff/appellee, father, has resided in Pennsylvania and has had partial physical custody basically in accord with the August 1, 1989 order.

Sometime in early August 1990, mother and the children and a male friend, Scott Neill, moved to Colorado without any notice to father. After arriving in Colorado mother notified father of the removal of the children from Virginia to Colorado. Prior to that notice father had been unsuccessful in telephoning the children and/or mother in Virginia as the telephone had been disconnected.

Father filed his petition to modify custody on August 30, 1990, a copy of which was served on mother by the Sheriff's Office of Teller County, Colorado, on October 23, 1990, notifying mother of the hearing on November 14, 1990 in Montgomery County, Pennsylvania. In addition, mother was served by the Sheriff's Office of Teller County with a copy of a petition for contempt on September 28,

1990, with a rule returnable and hearing date of November 14, 1990.[1] Mother did not appear on November 14, 1990 even though she acknowledged receipt of both petitions. (See P-1 of 11/14/90.) The hearing was held, testimony transcribed and an order entered on November 16, 1990. We note also that mother failed to appear before Logan H. Bullitt IV, custody conciliator, on October 17, 1990.

## DISCUSSION

This court's paramount concern is the best interests and permanent welfare of these minor children:[2] *Albright v. Fetters,* 491 Pa. 320, 421 A.2d 157 (1980). The children have lived the last five years of their lives in Virginia, with the exception of several months when they lived in the Pottstown, Montgomery County, area. The paternal grandparents and the father reside in the Pottstown area. Mother is from Australia and has no relatives in this area or in Virginia. The testimony revealed that mother has no friends or relatives in Colorado nor do the children, nor does Scott Neill.

---

1. Note that there was a petition for special relief and order of August 20, 1990, which directed the immediate return of the children to father. This was accomplished and on September 5, 1990 the children were returned to mother since the court felt that it had been misled by the allegations that the whereabouts of the children were unknown on August 20, 1990 when in fact father acknowledged receipt of a letter from mother from Colorado on August 18, 1990. The matter was to proceed in the normal orderly fashion on the petition to modify custody. In view of the court's harsh admonitions to father's counsel on September 5, 1990, it was suggested that counsel could seek another judge. Counsel for father chose not to do so.

2. The emotional well-being of a parent is *not* a factor to be considered in determining custody.

We take notice of the findings of fact and the conclusions made by the Honorable Marjorie C. Lawrence of this court in her comprehensive opinion and order of August 1, 1989.[3] We further note that the mother has been the primary caretaker of these children. While the role of primary caretaker is a substantial factor to be considered, it is only one of several factors that should be considered. We also note that the father has demonstrated his ability to assume the role of primary caretaker during his times of partial physical custody when the children have been with him both on their long weekends and vacations.

Mother clearly violated the shared legal custody provisions of the order of August 1, 1989 when she failed to consult or discuss with father the move to Colorado and by removing the children to Colorado and registering them in a new school in the new area without any consultation whatsoever with father. Such conduct certainly does not foster the best interests of the children nor does it promote father's relationship with them. It obviously would seriously interfere with the partial physical custody granted to father by the order of Judge Lawrence of August 1, 1989 which, inter alia, granted him the second and fourth weekends of each month from Friday at 6 p.m. to Sunday at 8 p.m. and five three-day weekends over the holidays such as Martin Luther King's Birthday, President's Day, Memorial Day, Columbus Day, and Veterans Day.

In the very recent case of *Gruber v. Gruber,* 400 Pa. Super. 174, 583 A.2d 434 (1990),[4] the court

---

3. We did not overrule this order. Mother did not abide by this order which failure acts to the detriment of the children.

4. Note that this decision was handed down after this court's order of November 16, 1990.

(Beck, *J.*) set forth a three-prong test to be considered in a custody relocation matter which must be analyzed by the court:

(1) The advantages of a move outside the jurisdiction by the custodial parent and whether the move would enhance the quality of life of the custodial parent, and

(2) Scrutinize the motives of the parent attempting to relocate and those of the parent seeking to prevent the move, and

(3) Consider a visitation schedule with the non-custodial parent which is realistic and will foster an ongoing relationship between the child (or children) and the non-custodial parent.

Before making our analysis, we do note that in *Gruber v. Gruber, supra,* the court said that where a relocation to a geographical distance is sought for the custodial parent and the non-custodial parent challenges the move, the custodial parent has the initial burden of showing that the move is likely to significantly improve the quality of life for that parent and the children. We point out that in the instant case the mother removed the children to Colorado without any notice, consultation, or court proceeding and that father learned of the move after it had been accomplished.

Looking at considerations 1 and 2 from *Gruber,* we must review the record. From the record taken as a whole, we can ascertain that the mother's reasons for the move to Colorado were solely because real estate was cheaper and she could purchase a house. We note, of course, that mother previously was living in Virginia and father, as a practical matter, had no mid-week visitation. Father, however, certainly had partial physical custody on alternate weekends, visitations which certainly would not be practical between Pennsylvania

and Colorado. The testimony revealed nothing in Colorado that was predicated upon some economic, education, religious, health or emotional compulsion to justify such a drastic change in the lives of these two children. This is not a case of the mother returning to an area where her relatives reside or a case of mother and new husband relocating for employment purposes. The record certainly indicates that the children's ties are here in the Eastern Corridor area between Montgomery County and Virginia.

As we previously noted, the order of August 1, 1989 provided for shared legal custody. Despite this order, mother never advised father of the move and he learned about it after it had been completely accomplished. Such actions, and failure to abide by the order of August 1, 1989 for shared legal custody, certainly indicated to this court that mother was considering her own best interests and not those of the children, and was attempting to limit or prevent the visitation by father and preventing the father from sharing in the process of raising his two minor children. This relocation certainly was not motivated by any desire to return to an extended family or friends, nor to pursue educational opportunity nor an improved physical environment in which to live and raise these children. Mother, by pre-emptively removing these children to Colorado at this stage in their lives, particularly where the testimony revealed that they have lived in four or five different locations since the separation in 1986, and in removing them far from their father and from any realistic opportunity for frequent contact with their father, will certainly upset the continuity of their lives. Mother's motivation clearly indicates a lack of concern for the visitation rights of father. What better indication of such lack of concern could

there have been than moving unannounced to Colorado and then informing father when same has been accomplished, particularly in view of the August 1, 1989 order granting joint legal custody? Mother has shown that she cannot and will not comply with present visitation arrangements nor can it be said that she would cooperate with any alternate visitation arrangements. Mother simply announces by letter marked P-2 that father's visitation will no longer be possible. Father, on the other hand, has shown his sincere desire to continue and deepen his relationship with his children. During most of his scheduled visits, father made the long trip to Leesburg, Virginia and back. He made the effort to bring the children back to Pennsylvania where they could be with the extended family, rather than just go to a motel in Virginia. (See N.T. at 20.)

Prior case law also gives this court guidelines in a relocation situation. It is clear that mother has a right to move to another state or location. However, this right must take into account the best interest of the children. In *Commonwealth ex rel. E.H.T. v. R.E.T.*, 285 Pa. Super. 444, 427 A.2d 1370 (1981), the court said:

"Although one's desire to relocate his or her place of residence hardly suggests a lack of stability or renders him or her unfit to serve as a custodial parent, the manner in and care with which such a relocation is accomplished may serve as one indication of that person's stability and consequent parental fitness." *Id.* at 449, 427 A.2d at 1372.

This court may not give preference to the parent who will remain in the jurisdiction. *Commonwealth ex rel. Lettie H.W. v. Paul T.W.*, 281 Pa. Super. 262, 422 A.2d 159 (1980); *G.M.P. v. A.P.*, 282 Pa. Super. 372, 421 A.2d 769 (1980). The law is clear that the

custodial parent should be permitted to move with the children as long as there is no evidence of the parent's motivation to alienate the children's affection for the non-custodial parent: *McCourt v. Meyers,* 268 Pa. Super. 152, 407 A.2d 875 (1979), which was a case where mother relocated with her new husband to Arizona where her new husband had a job and where the father sought a transfer of primary physical custody from the mother based on the mother's relocation. The court stated emphatically that it would not order mother to forfeit her custody to the child if she moved to Arizona:

"To condition [the mother's] custody on her remaining [in Pennsylvania] as [the father] suggests would be to use the child to force [the mother] into a situation unreasonable as to her and not to the advantage of the child. There is no evidence that [the mother] is attempting to alienate the child's affections for [the father]. No doubt the arrangement [permitting the mother to move] is not satisfactory to [father], but it recognizes his interests and places no financial hardship on him. Custody orders are seldom satisfactory to both parties."

In the case of *K.D. v. M.H.,* 201 Pa. Super. 36, 446 A.2d 1323 (1982), the mother indicated her intention to relocate to Vermont and the court held that such an intention was not the basis for transferring custody to the father. In that case the children had been in mother's primary physical care since separation and the mother was moving to Vermont in connection with her new husband's job opportunity there. In this case, also, the mother had informed the father of the proposed move and had offered him liberal visitation rights. The court confirmed custody of the children in the mother.

The basic principle of all of the above cases is that in the determination of an award of custody the

relocation should be taken into account. However, it is not controlling and the best interests and the welfare of the children is paramount. The court should consider whether there is evidence that the custodial parent is attempting to alienate the other parent by relocation. In all of the above-cited cases there was a valid and compelling reason for the relocation. In *McCourt, supra,* the mother was moving to Arizona where her new husband had obtained employment. In *K.D. v. M.H., supra,* the mother relocated to Vermont in connection with her new husband's job.

While a desire to relocate does not necessarily reflect a lack of stability or render a parent unfit to serve as a custodial parent, it is important to look at the manner in which and the care with which any relocation is accomplished or is to be accomplished as an indication of the parent's stability and consequent parental fitness. In the case of *Commonwealth ex rel. E.H.T. v. R.E.T., supra,* the court, in awarding custody to the father, found that:

"[R]ather than a factor precipitating the move, the children's welfare, educational or otherwise appears to have been given little, if any, consideration. Even if parental fitness had been the controlling question, therefore, there is evidence in the record to support a conclusion that appellant lacks sufficient stability to provide a proper home for her children." (footnotes omitted)

The facts of this case are important and can be summarized as follows: The mother, the custodial parent, and the children left for a vacation in North Carolina, a state in which they had neither family or friends prior to their arrival. After 14 days, mother decided that she and her children would become residents of North Carolina. Seven days later mother returned to Pennsylvania to supervise the

transfer of her family's belongings to their new home in North Carolina. The children remained in North Carolina with people who had been complete strangers only days earlier. Mother contended that one of the factors was the quality of education the children would receive in North Carolina but there was nothing of record that their education was in need of improvement, particularly since they were enrolled in enrichment programs in Pennsylvania and had good levels of achievement. Only six days after mother decided to relocate in North Carolina she enrolled the children in Heritage Christian Day School, a school that had not been accredited as of the date of the children's enrollment nor had it been completely constructed at time of the investigator's report.

In the recent case of *Lozinak v. Lozinak,* 390 Pa. Super. 597, 569 A.2d 353 (1990), the court affirmed the award of custody to father where mother was moving to Iowa, stating:

"There is nothing in Iowa where the mother wishes to take Heather that is predicated upon some economic, educational, religious, health or emotional compulsion dictating or justifying such a drastic move in the life of Heather at this time. All of the child's ties are in Pennsylvania. Her significant relationships are bound up in her teachers, classmates, friends and relations who give her that abundance of self-assurance and a glowing view of life at this crucial time in her young life."

In *Clapper v. Clapper,* 396 Pa. Super. 49, 578 A.2d 17 (1990), Mrs. Clapper informed Mr. Clapper that she intended to move to Connecticut with the children. Mr. Clapper refused to consent to the proposed relocation. It should be noted that he had a partial physical custody award for visitation every Tuesday evening, every other weekend from Friday

night through Sunday night, for six weeks during the summer and for rotating major holidays.[5] Mrs. Clapper's desire to move to Connecticut was for the purpose of bettering *her* education, occupational skills and opportunities and quality of life. These goals, of course, relate to Mrs. Clapper's desire for self-improvement. The court said:

"While we cannot fault Mrs. Clapper for wanting to better her life, she may be accomplishing her goals at the expense of the children. The effect of the move would be to uproot Jessica and John from familiar and congenial surroundings and to remove them from their father, who up to this time has maintained a steady and frequent relationship with his children."

We hasten to add that under the facts of this case, the order of this court will not cause an infringement of mother's right to travel and relocate. Although it is not controlling, the court in deciding questions of custody may consider what an effect a change of location may have on the child. Here we are not transferring custody to father merely because of mother's plan to move. As this court well understands, a move by one parent is not dispositive in determining custody. When, however, the record is bare of any compelling reason for a move to a state as distant as Colorado, beyond the fact that real estate was less expensive and a home could be purchased, the move and relocation takes on added significance. As we noted, the removal to another jurisdiction is not controlling in the custody case and this is especially true when the child's or children's relationship with the parent without custody will not be unduly limited: *Commonwealth ex rel. Pierce v.*

5. Note that this is very similar to the visitation arrangement which was granted to Mr. Lambert by the August 1, 1989 order.

*Pierce,* 493 Pa. 292, 426 A.2d 555 (1981). By implication, the fact that a parent moves and removes the children to a distance assumes a greater significance in weighing the best interest of the children when their relationship with the non-custodial parent will be severely restricted. It is obvious that mother's move will severely restrict the relationship of the children with their father and also their extended family.

The third *Gruber* consideration calls for a visitation schedule that will insure a continuing, meaningful relationship between the children and the non-custodial parent. We readily recognize that we did not set forth any visitation schedule. We had no input from mother, who chose not to appear at the hearing to determine custody. We readily recognize that such a schedule should be established and we will do so upon remand from the Superior Court and after a hearing which will give this court the desires of mother, which we can then balance against the best interests of the children. If the parties have agreed as to visitation said agreement has not been submitted to this court for incorporation into this order.

## CONCLUSION

The unilateral move to Colorado by mother and children without notice to father and in violation of the order of August 1, 1989 (Lawrence, *J.*) certainly indicates to this court that the motives of the mother were calculated to defeat the relationship of father with his children, with no showing that such a move would enhance the quality of life for the children or, for that matter, the quality of life for mother. Mother did not attend the custody hearing even though she had notice of the time and place. That she had to

travel from Colorado was a matter of her own choosing. No effort was made by mother to advise father of the move prior to its accomplishment nor did she petition this court to modify the order of August 1, 1989. Obviously father had no opportunity to petition this court prior to the move since he was not informed that it was to take place. The first two prongs of *Gruber, supra,* clearly have been met.

The third prong of *Gruber* could not be met as mother chose not to appear at the hearing for custody and presented no testimony re visitation or partial custody.

The best interests of these children, Corey and Erin, will best be served by this award of primary physical custody to father, Thomas Jay Lambert, with such partial physical custody to mother, Susan Kennedy Lambert, as may be decided at a later day after hearing.