612 A.2d 1075

**Bruce C. MORAN, Appellee,**

v.

**Glyndia R. MORAN, Appellant.**

Superior Court of Pennsylvania.

Argued June 3, 1992.

Filed Aug. 25, 1992.

Robert Glessner, York, for appellant.

Andrew B. Brown, York, for appellee.

Before MONTEMURO, KELLY and CERCONE, JJ.

KELLY, Judge.

In this appeal, we are called upon to determine whether the trial court properly held that an "agreement" made during a "conciliation conference" between the parents was binding upon them, thus adopting the conciliator's proposed order which granted partial physical custody of the couple's infant daughter to the father. We find that the trial court erroneously treated the conciliator's proposed order as a final order, and therefore, committed reversible error by not

granting a hearing after receiving letters from the mother and the infant's doctors indicating that the proposed custody arrangement reached at the "conciliation conference" would adversely affect the infant by interfering with her breast-feeding schedule. Thus, we vacate the trial court's order and remand for a hearing on the issue of whether the partial physical custody arrangement would adversely interfere with the infant's breast-feeding schedule.

The relevant facts and procedural history are as follows. Glyndia R. Moran (hereinafter the mother) and Bruce R. Moran (hereinafter the father) are the natural parents of Megan Marie Moran (hereinafter the child), who was born on August 24, 1991. The father filed a complaint for custody on September 17, 1991. The parties, with counsel, appeared before a court-appointed conciliator on October 3, 1991, at which time mother and father submitted conference memoranda. At the conference, the parties came to an agreement and the conciliator drafted a proposed order memorializing the agreement. However, on the next day, via a letter, the mother notified the conciliator, the father's counsel, and the court that the agreement was rescinded. The mother supplemented her letter, dated October 4, 1991, with letters from two medical doctors. The doctors' letters indicated that the child may be adversely affected as a result of the proposed order's custody arrangement because the child was being breast-fed by the mother. For this reason, the mother asked in her letter for a hearing. The father countered with a letter, dated October 8, 1991, that addressed the breast-feeding issue. In this letter, the father reminded the judge of another breast-feeding case in which she ruled in favor of the father.

On October 16, 1991, the court adopted an order that encompassed the parties' agreement at the conciliation conference. However, the court made no reference to the letters of the two doctors, mother or father. The October 16, 1991 order stated as follows:

At the Conciliation Conference the parties reached an agreement and an Order shall be entered as follows:

\* \* \* \* \* \*

Partial custody rights of the Father are as follows.

(1) Every other weekend from Friday at 5:00 P.M. until Sunday at 5:00 P.M. However, this alternating weekend schedule shall be phased in. Beginning with the weekend of October 4, 1991, Father shall exercise visitation from Saturday at 9:00 A.M. until Saturday at 6:00 P.M. during the month of October. For all alternating weekends during the month of November, Father shall exercise visitation from Friday at 5:00 P.M. until Saturday at 6:00 P.M. In December the full weekend visitation shall go into effect from Friday at 5:00 P.M. until Sunday at 5:00 P.M.

(2) Beginning in December, 1991, on Tuesday and Thursday evenings each week from 5:00 P.M. until 7:00 P.M. The evening visitation shall extend as the child grows older to a later hour in the evening as is appropriate for her normal bedtime hour.

(3) Up to six (6) weeks during the summer provided that at least thirty (30) days written notice shall be provided to Mother, and the parties shall agree as to when the six weeks shall be exercised.

(4) Father's rights of visitation on holidays shall alternate with the holidays of Thanksgiving, New Year's Day, Memorial Day, Fourth of July and Labor Day. The visitation shall be exercised from 9:00 A.M. until 6:00 P.M.; provided, however, that if the holiday falls on a Monday subsequent to Father's visitation, his weekend visitation shall extend until Monday at 6:00 P.M. The alternating holidays shall begin with Father's visitation on Thanksgiving, 1991 and alternate thereafter.

(5) Father shall have visitation on Father's Day and Mother shall have visitation on Mother's Day irrespective of when Father's weekend visitation occurs.

(6) Regarding the Christmas holiday, Father shall always have visitation from noon Christmas Day until noon

on December 26. The remainder of the Christmas holiday shall be split as the parties may agree.

(7) Father shall have the child at least two or three hours on the child's birthday.

(8) Any other times as the parties may agree.

We recognize that Mother is presently breast-feeding the child. However, we believe that appropriate measures can be taken by the Mother so as not to interrupt the child's feeding schedule.

\* \* \* \* \* \*

This timely appeal followed.

On appeal, the mother raises the following issues for our review:

I. WHETHER THE COURT ABUSED ITS DISCRETION IN FINDING THAT THE VISITATION SCHEDULE TO WHICH THE PARTIES "AGREED" DID NOT INTERFERE WITH MOTHER'S BREASTFEEDING REGIMEN AFTER MOTHER PRESENTED LETTERS FROM TWO DOCTORS SAYING IT DID INTERFERE, WITHOUT HOLDING A HEARING ON THIS ISSUE?

II. WHETHER THE "AGREEMENT" OF THE PARTIES AT A "CONCILIATION CONFERENCE" IS BINDING IF ONE PARTY SEEKS TO WITHDRAW FROM THE AGREEMENT FOR GOOD CAUSE SHOWN BEFORE THE ENTRY OF THE FINAL ORDER?

Mother's Brief at 5.

██  The mother argues that the court erred in calling the mother's and doctors' letters an "inappropriate and improper method of trying to vacate the order *ex parte.*" We agree.

As the mother correctly asserts, conciliators do not issue orders; they merely summarize and propose orders.

Following the conclusion of each conference, the conciliator shall prepare a conciliator's summary together with a *proposed* order encompassing the agreement of the par-

ties, to be submitted to the court for entry as an Order. If no final agreement has been achieved, a summary of the items as set forth in this rule shall be submitted to the Court. (mother's emphasis)

York County Local Rule 1915.3(b)(9). Thus, the trial court erred in treating the alleged agreement of the parties at the conciliation conference as if it were a final order. Moreover, no final agreement had been achieved. The mother submitted letters to the court, father's counsel, and the conciliator the day after the conference and prior to the trial court's issuance of a final order. In doing so, the mother properly sought to raise the breast-feeding issue before a final order was entered. The court should have granted a hearing because the agreement was not binding upon the court. *See Daniel K.D. v. Jan M.H.*, 301 Pa.Super. 36, 39, 446 A.2d 1323, 1324 (1982).

■ Moreover, the mother was correct in noting that the communication was not *ex parte*. *Black's Law Dictionary* 5th ed. at pg. 517 defines *"ex parte "* as "on one side only ... without notice to, or contestation by, any person adversely interested." The father's letter, dated October 8, 1991, clearly shows notice of the breast-feeding issue and the contestation thereof.

In conclusion, the court erred in calling the mother's and doctors' letters an "inappropriate and improper method of trying to vacate the order *ex parte.*" The communications were not *ex parte* because all relevant parties were notified of the communications. Moreover, at the time the letters were sent to the trial court, no final order had been entered, as conciliators do not have authority to issue final orders.

Based upon the foregoing, the trial court's order is vacated and the case is remanded for a hearing on the issue of whether visitation schedule would interfere with the child's breast-feeding schedule.[1] Jurisdiction is relinquished.

---

1. Although we have remanded this case for a hearing on the breast-feeding issue, the need for this hearing may already have been rendered moot if the allegations, raised at oral argument, that the child is no longer breast-feeding, prove to be true.